**TELECOMM TECHNICAL SERVICES, INC.; Realcom Office Communication; Nova USA Telecommunications Co.; American Telecom Corporation; DD Hawkins Communications, Inc.; CMS Communications, Inc.; Start Technologies Corporation; Olde York Valley Inn, Plaintiffs/Counter–Defendants,**

v.

**SIEMENS ROLM COMMUNICATIONS, INC., Defendant/Counter–Plaintiff.**

**No. 1:95–CV–694–WBH.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 17, 1998.

---

John Kirk Train, III, Michael P. Kenny, John Philip Fry, Patrick J. Flinn, William H. Jordan, Keith Edward Broyles, Alston & Bird, Atlantic, GA, Mark C. Hansen, phv, Michael K. Kellogg, phv, Steven F. Benz, phv, Austin C. Schlick, phv, William B. Petersen, phv, Kellogg Huber Hansen Todd & Evans, Washington, DC, Robert Stephen Berry, phv, James Daniel Leftwich, phv, Gregory Baruch, phv, Berry & Leftwich, Washington, DC, for plaintiffs.

Charles E. Campbell, Long Aldridge & Norman, Atlanta, GA, Keith E. Pugh, Jr., phv, Howrey & Simon, Washington, DC, Otis W. Carroll, Jr., phv, James Patrick Kelley, phv, Office of Otis W. Carroll, Jr., Tyler, TX, Kenneth A. Gallo, phv, Rogers & Wells, Washington, DC, for Rolm Company, Siemans Rolm Communications, Inc., defendants

Keith E. Pugh, Jr., phv, Howrey & Simon, Washington, DC, Otis W. Carroll, Jr., phv, James Patrick Kelley, phv, Office of Otis W. Carroll, Jr., Tyler, TX, Kenneth A. Gallo, phv, Rogers & Wells, Washington, DC, for Rolm Company, counter-claimant.

Patrick J. Flinn, William H. Jordan, Keith Edward Broyles, Alston & Bird, Atlantic, GA, Mark C. Hansen, phv, Michael K. Kellogg, phv, Steven F. Benz, phv, Kellogg Huber Hansen Todd & Evans, Washington, DC, Robert Stephen Berry, phv, James Daniel Leftwich, phv, Berry & Leftwich, Washington, DC, for Telecom Technical Services Inc., Realcomm Office Communication, Inc., Nova USA Telecommunications Co., American Telecom Corp., DD Hawkins Communications, Inc., Sharecom Division of Start Technologies Corporation, CMS Communications, Inc., Olde York Valley Inn, counter-defendants.

## ORDER

HUNT, District Judge.

Plaintiffs bring this antitrust action under sections four and sixteen of the Clayton Act, 15 U.S.C. §§ 15 and 26, seeking damages and injunctive relief for violations of sections one and two of the Sherman Act, 15 U.S.C. §§ 1 and 2. Defendant has also asserted a host of counterclaims under federal and state law. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. Before the Court are defendant's motion for summary judgment on plaintiffs' complaint [384], defendant's motion for partial summary judgment on its counterclaims for copyright infringement [385-1] and for permanent injunctive relief [385-2], plaintiffs' motion for partial summary judgment on their claims for monopolization and attempted monopolization [386], plaintiffs' motion for summary judgment on defendant's counterclaims [387], defendant's motion to file surreplies in opposition to plaintiffs' motions for summary judgment [407], and plaintiffs' motion to strike the report and testimony of Miles Alexander [392].

## I. BACKGROUND

This case is about the servicing of Rolm-branded private branch exchanges ("PBXs"). A PBX, also known as a "switch," is a combination of hardware and software that allows businesses with multiple telephone lines (typically over 50) to send and receive telephone calls, both internally and externally. Rolm is a major manufacturer of PBXs sold in the United States, but it is not contended that Rolm enjoys a monopoly over the sale of this equipment. The parties all agree that other manufacturers, such as Lucent Technologies, Nortel, and NEC, compete with Rolm in the market for sales of PBXs. However, the parts and software used in the PBXs vary among the different manufacturers, and Rolm possesses intellectual property rights in many of the parts and all of the software incorporated into its PBXs.

In addition to manufacturing PBXs, Rolm is also in the business of providing parts and service to end users of Rolm PBXs. Plaintiffs are independent service organizations[1] ("ISOs") that are also in the business of servicing Rolm PBXs. Thus, they compete with Rolm for the business of end users.[2] However, because Rolm possesses patents on a number of proprietary parts and copyrights on its software, the ISOs are at a competitive disadvantage in this market. They contend that this competitive disadvantage is an "antitrust injury" for which they are entitled to treble damages under the Sherman Act.

Rolm denies that any of its conduct violates the federal antitrust laws. In addition, it contends that plaintiffs are liable to it for unlawfully infringing on Rolm's federally protected intellectual property rights and under principles of state law.

1. Some plaintiffs are both end users and ISOs. Plaintiff Olde York Valley Inn is only an end user.

2. End users have a third option for service of their PBXs—self-service—whereby they purchase the parts and software they need from

## II. DISCUSSION

### A. Procedural Motions

Before addressing those motions that deal with the merits of the parties' claims, the Court will first resolve the procedural matters that are before it. First, defendant has moved for leave to file surreplies in opposition to plaintiffs' motions for summary judgment on the ground that plaintiffs raised new arguments in their reply briefs. After considering the record before it, including plaintiffs' opposition to the motion, the Court finds that defendant should be permitted to file its surreplies. Accordingly, defendant's motion [407] is GRANTED, and the Court will consider its surreplies in ruling on plaintiffs' motions for summary judgment.

The other procedural matter before the Court is plaintiffs' motion to strike the expert report and testimony of Miles Alexander [392]. Through this motion, plaintiffs raise objections to the Court's consideration of the opinions offered by Miles Alexander in support of defendant's motion for summary judgment on plaintiffs' antitrust claims. However, the Court notes that rather than filing a motion to strike under Federal Rule of Civil Procedure 12, the proper method for challenging the admissibility of such evidence is to file a notice of objection to the challenged testimony. *Morgan v. Sears, Roebuck and Co.*, 700 F.Supp. 1574, 1576 (N.D.Ga.1988). Accordingly, plaintiffs' motion is DENIED. Nonetheless, in ruling on defendant's motion for summary judgment, the Court will assess the admissibility of the statements in Alexander's report and will consider the objections raised by plaintiffs.

### B. Plaintiffs' Claims

The complaint that is presently before the Court—the Revised Second Amended

Rolm and perform the maintenance themselves. The parties agree that these three alternatives—Rolm, ISOs, and self-service—are the only three service options available to end users. Self-service only accounts for a small portion of all service performed on Rolm PBXs, however.

Complaint—is the fourth formulation of claims presented by plaintiffs in this action. It has been considerably streamlined and only contains claims for monopolization and attempted monopolization under section 2 of the Sherman Act.[3] Although these are distinct claims, plaintiffs essentially are pursuing a single theory of recovery. As plaintiffs' expert economist Dr. Roger Noll states, "this case is about Rolm's exploiting its control over parts and software to monopolize the service market." Report of Roger Noll at 31, Defendant's Motion for Summary Judgement, Ex. 8.

Plaintiffs' monopolization claim consists of two elements: 1) the possession by Rolm of monopoly power in the relevant market; and 2) the willful acquisition or maintenance of that power (as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident). *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 481, 112 S.Ct. 2072, 2089, 119 L.Ed.2d 265 (1992). Plaintiffs' attempted monopolization claim consists of three elements: 1) predatory or anticompetitive conduct engaged in by defendant; 2) specific intent to monopolize; and 3) a dangerous probability of achieving monopoly power in the relevant market. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459, 113 S.Ct. 884, 892, 122 L.Ed.2d 247 (1993). Both of these claims are premised on a theory of "monopoly leveraging"—the use of market power in one market to gain market share in another market other than by competitive means. *Key Enterprises of Delaware, Inc. v. Venice Hosp.*, 919 F.2d 1550, 1566 (11th Cir. 1990).

Plaintiffs' contend that "Rolm has acquired market power in service by denying competitors access to proprietary parts and software."[4] Defendant does not dispute the validity of this theory of recovery in the abstract. It maintains, however, that the facts of this case do not support such a recovery.

### 1. Defendant's Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, a court shall grant a motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Where the nonmoving party bears the burden of proof at trial, the moving party must demonstrate to the Court that "there is an absence of evidence to support the nonmoving party's case," *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), or must put forth affirmative evidence negating an element of the nonmoving party's case, *Fitzpatrick v. Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993). It is then the responsibility of the nonmoving party, by revealing evidence outside of the pleadings, to show that evidence supporting its case does exist or that the element sought to be negated remains a genuine issue of material fact to be tried. *Id.* Essentially, this requires the nonmoving party to come forward with evidence sufficient to withstand a directed verdict on this issue at trial. *Id.* at 1116–17.

The nonmoving party is not required to carry its burden of proof at the summary judgment stage. In analyzing the case, the Court views the facts in the light most favorable to the nonmoving party and

**3.** Section 2 of the Sherman Act provides that "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be guilty of a felony...." 15 U.S.C. § 2. Section 4 of the Clayton Act, 15 U.S.C. § 15, allows any person injured by a violation of the antitrust laws to sue for damages.

**4.** For purposes of their antitrust claims, plaintiffs do not dispute that Rolm's intellectual property rights are valid. In response to Rolm's counterclaims for copyright and patent infringement, however, plaintiffs do dispute the validity of those rights.

makes all factual inferences in favor of that party. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993). "The court must avoid weighing conflicting evidence or making credibility determinations." *Id.* at 919. "Where a reasonable fact finder may 'draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment.'" *Id.* (quoting *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir.1989)).

Defendant offers a number of arguments in support of its motion for summary judgment on plaintiffs' antitrust claims. First, it contends that plaintiffs' claims are barred by the statute of limitations. Next, it maintains that plaintiffs have failed to plead their claims properly. Finally, it offers several substantive arguments concerning the merits of plaintiffs' claims. The Court will address these arguments in turn.

### a. Statute of Limitations

■ Defendant initially argues that plaintiffs' claims arising out of defendant's alleged refusal to deal with plaintiffs are barred by the relevant statute of limitations.[5] Under the federal antitrust laws, any suit to enforce a private cause of action must be brought "within four years after the cause of action accrued." 15 U.S.C. § 15b. Generally, a cause of action accrues "when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 328, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). Defendant, citing *David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936 (9th Cir.1981) and *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705 (11th Cir.1984), argues that a statement of a definitive policy constituting a unilateral refusal to deal causes an antitrust claim to

accrue and the statute of limitations to begin to run. Defendant maintains that it definitively announced its policy of refusing to sell new parts and software to ISOs in January 1990 and that plaintiffs, therefore, were required to file suit within four years of that time. Because plaintiffs did not file this action until July 1994, defendant argues that all of their claims based on the refusal to deal are time-barred.

■ As an initial matter, the Court notes that *Orgell* included only a very cursory discussion of the statute of limitations issue, and the Ninth Circuit expressly noted the need for a clearer analysis in *La-Salvia v. United Dairymen of Arizona*, 804 F.2d 1113, 1118 (9th Cir.1986) ("the brief opinion in *Orgell* does not disclose the basis for its conclusion that the initial refusal was both final and the source of the plaintiff's injury. *Orgell* may encourage ambiguous responses to requests to deal coupled with later allegations that those denials were final."). After decrying the limited analysis of *Orgell*, the court stated "[w]e therefore place on defendants the burden of showing that their initial refusal to deal was in fact final, and that the finality of the refusal was conveyed to the plaintiff." *Id.*

■ This statement is consistent with the Eleventh Circuit's holding in *Midwestern Waffles*. In that case, the court was confronted with the question of whether a refusal to grant plaintiffs a franchise that occurred more than four years prior to the filing of a suit was time-barred. The court concluded that a genuine issue of material fact existed on the question, noting that

> [i]f plaintiffs' subsequent requests for a franchise territory in Alabama or another southern state were genuine, that is if plaintiffs had reason to believe the origi-

---

**5.** Plaintiffs vigorously deny that this is a "refusal to deal" case. Plaintiffs' Opposition to Defendant's Motion for Summary Judgment at 1–2. Although defendant recognizes that plaintiffs' claims include allegations of anticompetitive conduct other than refusing to sell parts and software to plaintiffs and re-

stricts its statute of limitations argument to those claims that are based on the alleged refusal to deal, the Court agrees with defendant that the overwhelming majority of plaintiffs' alleged damages appear to stem from the refusal to deal.

nal decision not to grant them such a franchise did not still stand, there would be a new alleged injury when a genuine subsequent request was denied. If, however, plaintiffs' subsequent requests were futile and plaintiffs had reason to know they were futile, the statute of limitations will be found to bar plaintiffs' claim that defendants violated antitrust law by horizontally allocating territories. *Midwestern Waffles*, 734 F.2d at 715. Although defendant has presented strong evidence that at least some of the plaintiffs viewed Rolm's announcement of January 1990 that it would not sell parts directly to ISOs as a final decision, in order to prevail on its motion for summary judgment, defendant must demonstrate that no reasonable jury could find that plaintiffs did not have reason to believe that defendant would reconsider its policy of refusing to sell parts directly to ISOs. Because documents in the record would support a contrary finding, defendant is not entitled to summary judgment on this ground.

The strongest evidence that plaintiffs viewed Rolm's January 1990 refusal to deal as final comes from the depositions of plaintiffs' representatives. Representatives of CMS, NOVA, and Realcom all testified that they were aware that, no later than January 1990, Rolm announced that it would not sell new parts directly to ISOs, and further testified that they were not aware of any change in that policy. Dep. of Thomas Murphy at 39–40; Dep. of Glenn Cosman at 280; Dep. of Fred Shriner at 228–229; Dep. of Robert Pyzna at 96–97; Dep. of Charles McNamee at 34–35. Defendant also points to answers to interrogatories from NOVA and ATC that state that these companies believed that requesting parts from Rolm was futile after January 1990. Defendant's Brief in Support of Motion for Summary Judgment, Ex. 3, 4. However, while this evidence could certainly support a finding in favor of defendant on the statute of limitations issue, plaintiffs have carried their burden of pointing to specific evidence outside the pleadings that demonstrates the existence of genuine issues of material fact on this question.

Three documents in particular can be read to support a finding that defendant's refusal to sell parts to plaintiffs in January 1990 was not sufficiently final to trigger the statute of limitations. The first two are minutes from the meetings of the Board of Directors of the National Association of Telecommunications Dealers ("NATD"), an industry group of which at least some plaintiffs are members. Fred Shriner of NOVA was present at both of these meetings, which took place on October 19, 1990 and November 11, 1991.

The minutes from the 1990 meeting indicate that a representative of Comdisco (a member of NATD but not a party to this action) had recently met with Rolm concerning its refusal to sell parts to "remarketers" and that "a favorable resolution was expected." Plaintiffs' Opposition to Motion for Summary Judgment, Ex. 46 at 3. Similarly, the 1991 minutes indicate that Rolm is "currently rethinking its position" on selling parts to third parties. *Id.*, Ex. 71 at 3. The minutes further state that "Shriner's report [on this issue] is incorporated as APPENDIX III." *Id.* Appendix III of the minutes bears the heading "Rolm Liaison Committee," and summarizes the information relayed by Frank Keenan, Industry Relations Manager for Rolm, to members of the NATD summer meeting. According to the document, Keenan stated that Rolm's refusal to sell parts to third parties had not been as successful as it had hoped and that "perhaps in the 1992 time frame, Rolm might change this policy." *Id.* at Appendix III.

The third document is a Rolm memorandum to its file, dated February 7, 1994, regarding a meeting between Rolm and representatives of the NATD. Both Shriner and Charles McNamee of Realcom were in attendance. The memorandum indicates that the availability of parts to third parties was discussed at the meeting and that Rolm indicated that it would be willing to consider changing its current

practice of only selling parts to end users if the NATD could provide a business case to justify a change. Plaintiffs' Opposition to Motion for Summary Judgment, Ex. 182.

Because these documents indicate that after Rolm announced its allegedly final policy, it was making statements in the marketplace, and at times directly to plaintiffs' representatives that it was willing to discuss this policy and would consider changing it, the Court cannot conclude, as a matter of law, that Rolm's statement to its branch managers that "Rolm will not sell maintenance parts to other than end users of ROLM systems," contained in a memorandum dated January 8, 1990, constituted a final refusal to deal with plaintiffs that triggered the statute of limitations. Furthermore, the record contains evidence that at least some plaintiffs attempted to purchase parts from Rolm during the four years prior to the filing of this suit. *See* Defendants' Brief in Support of Motion for Summary Judgment, Ex. 3, 4. Accordingly, defendant is not entitled to summary judgment on this ground.[6]

### b. Pleading Issue

■ Rolm also contends that it is entitled to summary judgment on plaintiffs' antitrust claims because the allegations contained in the Revised Second Amended Complaint are fatally inconsistent with the theory of recovery articulated by plaintiffs' expert economist. In the complaint, plaintiffs allege that each proprietary part and each piece of software is in a separate relevant antitrust market. *See* Revised Second Amended Complaint, ¶¶ 37–40. However, plaintiffs now seek to recover under a theory of a unified "parts and software" market. *See* Report of Roger Noll at 22–24, Defendant's Motion for Summary Judgement, Ex. 8. Although the obvious solution to this problem would be to amend the complaint, defendant strongly objects to any such amendment, and

notes that the Court previously denied plaintiffs' motion for leave to file a third amended complaint that contained allegations of a unified parts and software market.

In response to this argument, plaintiffs take the position that it is immaterial to their claims under section 2 of the Sherman Act whether Rolm has market power in a unified market for parts and software or multiple market because the claims under section 2 only require the existence of, or a dangerous probability of achieving, monopoly power in a single relevant market that plaintiffs contend is service for Rolm PBXs. Although there is some intuitive appeal to this argument, it does not appear to be an accurate statement of the law that governs this case.

While plaintiffs are undoubtedly correct that most section 2 claims only require the definition of a single relevant market, *see Kodak*, 504 U.S. at 481, 112 S.Ct. at 2089, plaintiffs' claims are based on a theory of monopoly leveraging, which, as noted above, involves the use of market power in one market to gain market share in another market other than by competitive means. Thus, "proof of the existence of two separate ... markets is [a] necessary" element to this type of claim. *M.A.P. Oil Co., Inc. v. Texaco, Inc.*, 691 F.2d 1303, 1306.

Plaintiffs do not necessarily dispute that they bear this burden, as they state that they are prepared to prove that service is in a separate market from parts and software. At issue here is whether plaintiffs are required to prove the product and geographic components of both markets or whether it is sufficient for them to prove these components for the market that they allege that defendant has monopolized and attempted to monopolize—service of Rolm PBXs—and that parts and software are in a distinct market or markets. Unfortu-

---

6. The Court notes, however, that in order to recover for any injury arising out of an alleged refusal to deal, each plaintiff must demonstrate that it made a genuine request to purchase parts from Rolm during the limitations period and that such request was denied. *Midwestern Waffles*, 734 F.2d at 715.

nately, the Court has been unable to locate a single published decision addressing this issue.

However, the Ninth Circuit has issued an unpublished decision that is directly on point.[7] In *Delta Systems, Inc. v. TRW*, No. 87–4014, 1989 WL 41706 (9th Cir. April 21, 1989) (table disposition at 874 F.2d 815), the court, confronted with precisely the same argument advanced here by plaintiffs, noted that "[w]e are aware of no case brought under a monopoly leveraging theory in which the secondary market has not been defined to the same extent as the primary market." *Delta Systems*, 1989 WL 41706, at *4 (citing cases). The Court's search for such a case decided since *Delta Systems* has also been fruitless. Accordingly, the Court holds that in order to succeed on their monopoly leveraging theory, plaintiffs must define the product and geographic components of both the primary and the secondary markets.

■ The conclusion that plaintiffs' claims must be dismissed does not flow from this holding, however. Under Federal Rule of Civil Procedure 15(b), the Court may permit a party to amend its pleadings to conform them to the evidence presented at trial, and "shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party's action or defense upon the merits." Fed.R.Civ.P. 15(b). Although defendant argues that a finding that allowing such an amendment would unduly prejudice defendant was implicit in the Court's order of September 15, 1997, which denied plaintiffs' motion for leave to file their proposed third amended complaint, the Court disagrees. The Court's ruling was based on its finding that plaintiffs unduly delayed in seeking to assert the amendment and that allowing the amendment at that time would cause further delays in the litigation. These concerns are no longer present.

### c. Substantive Antitrust Issues

### i. Definition of Relevant Market

Although defendant reluctantly acknowledges that the theories under which plaintiffs seek to recover are legally valid, it contends that it is entitled to summary judgment on plaintiffs' antitrust claims because the record is devoid of any evidence to support such a recovery. These arguments must be evaluated in light of the Supreme Court's decision in *Kodak*, 504 U.S. 451, 481, 112 S.Ct. 2072, 2089, 119 L.Ed.2d 265 (1992), which forms the foundation of plaintiffs' claims.

The relationship between the parties in *Kodak* and the nature of the claims presented are virtually identical to those presented here. In *Kodak*, ISOs of Kodak copiers and micrographic equipment sued Kodak under sections I and 2 of the Sherman Act, alleging that Kodak's refusal to sell them parts prevented them from competing in the market for service of Kodak products. As in this case, Kodak competed with other manufacturers in the equipment markets, but its machines were sufficiently unique that the other manufacturers could not provide parts or service for Kodak machines. The district court granted summary judgment in favor of Kodak, but the Supreme Court found that summary judgment was not appropriate for a variety of reasons.

Although much of the *Kodak* opinion is devoted to an analysis of the ISOs' section 1 "tying" claims, the ISOs in *Kodak* were also pursuing a section 2 claim under a theory of monopoly leveraging. The Supreme Court's holding with respect to that claim—that a single brand of service can be a relevant market under the Sherman Act, *Kodak*, 504 U.S. at 481, 112 S.Ct. at 2090—is of critical importance here, as the

---

**7.** The Court recognizes that, under Ninth Circuit Rule 36–3, opinions that are not designated for publication are not precedential. However, as this Court is not bound by Ninth Circuit decisions, this rule is of no moment here. The Court simply finds the opinion instructive on the issue presented in this case.

outcome in this case hinges largely on the definition of the relevant antitrust market.

■■■ Although the concept of "relevant market" is central to all section 2 claims, it is a concept that is not easily defined. As the Eleventh Circuit has explained,

> Defining a relevant product market is primarily a process of describing those groups of producers which, because of the similarity of their products, have the ability—actual or potential—to take significant amounts of business away from each other. The reasonable interchangeability of use or the cross-elasticity of demand [8] between a product and its substitutes constitutes the outer boundaries of a product market for antitrust purposes.

U.S. Anchor Mfg., Inc. v. Rule Indus., Inc., 7 F.3d 986, 995 (11th Cir.1993) (quotations, citations, and footnotes omitted; footnote added). This is clearly a question of fact that normally must be resolved by a jury. Ad–Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp., 849 F.2d 1336, 1341 (11th Cir.1987). In the instant case, however, both sides of

this dispute contend that the question of relevant market can be decided as a matter of law.[9]

Defendant maintains that competition in the sale of PBXs prevents Rolm from charging supracompetitive prices for service of its PBXs and that, therefore, the relevant market in this case is a "systems" market that includes PBX equipment (the PBX itself), parts, software, and service sold by all manufacturers in the United States.[10] Although the Supreme Court in Kodak rejected a per se rule that, as a matter of law, competition in the primary equipment market precludes a finding of monopoly power in the aftermarket for service, Kodak, 504 U.S. at 471, 112 S.Ct. at 2084, it recognized that, in many instances, competition in the primary market would, as a matter of fact, prevent a firm from charging supracompetitive prices in an aftermarket. In support of its motion for summary judgment, Rolm argues that the undisputed facts of this case demonstrate that this is the economic reality of the situation at issue here.

Plaintiffs, however, have produced evidence from which a reasonable jury could

---

**8.** Cross-elasticity of demand is defined as "the extent to which consumers will change their consumption of one product in response to a price change in another." Kodak, 504 U.S. at 469, 112 S.Ct. at 2083.

**9.** It is important to note, however, that unlike the usual case involving cross-motions for summary judgment, the parties do not agree that the question of relevant market can be decided as a matter of law regardless of the definition that is ultimately adopted. Rather, plaintiffs and defendant argue that the facts that are material to the inquiry are undisputed and they support a finding of a certain relevant market. They disagree, however, about what facts are material. Consequently, they argue that if the Court is inclined to accept the opposing view of the relevant market, genuine issues of material fact preclude the Court from doing so as a matter of law.

**10.** This market definition is consistent with the view that "relevant market" for antitrust purposes is defined by the "products that have a sufficient competitive impact on the product of the defendant to be considered collectively in deciding whether the defendant

possesses monopoly power." Earl W. Kintner, Federal Antitrust Law § 12.3. To the extent that this definition of relevant market refers to the concept of monopoly power—defined as the ability to charge supracompetitive prices for an extended period of time—it is somewhat circular. It demonstrates an important point about the arguments advanced here, however.

Under defendant's definition of relevant market, the question of the percentage of Rolm PBXs to which Rolm provides service is irrelevant. Even if it were established that Rolm serviced virtually all of the Rolm PBXs, and, therefore, arguably could be said to have a monopoly share of that market, service for Rolm PBXs cannot be the "relevant market" for antitrust purposes, according to defendant, because competition in the sale of PBXs prevents Rolm from charging supracompetitive prices for service. Thus, for purposes of the instant motions, the concepts of "relevant market" and "monopoly power" are essentially indistinguishable. The Supreme Court recognized the conflation of these concepts Kodak. See Kodak, 504 U.S. at 469 n. 15, 112 S.Ct. at 2083 n. 15.

conclude that Rolm's service pricing has been 30% to 60% higher than comparable ISO service during the period relevant to this litigation, *e.g.*, Plaintiffs' Opposition to Motion for Summary Judgment, Ex. 68 at ROLM 0633906, Ex. 151, and that Rolm was interested in preventing ISOs from effectively competing for the business of Rolm end users and employed strategies designed to achieve that goal, *e.g.*, *id.*, Ex. 71 at Appendix III. Thus Rolm "bears a substantial burden in showing that it is entitled to summary judgment. It must show that despite evidence of increased prices and excluded competition, an inference of market power is unreasonable." *Kodak*, 504 U.S. at 469, 112 S.Ct. at 2083. After carefully considering the record before it, the Court concludes that Rolm has failed to carry this burden.

As the defendant did in *Kodak*, Rolm relies on the concept of "lifecycle pricing" in support of its definition of relevant market. Simply stated, Rolm contends that consumers recognize that PBXs are durable goods and, therefore, select among competing brands based not only on the price of the goods themselves, but also on the expected cost of the maintenance of the goods over their lifetime. Accordingly, Rolm argues that because it competes with a number of other manufacturers of PBXs, if it were to charge supracompetitive prices for service, consumers would choose other copiers when making their initial purchase decision. Thus, the competition in the equipment market prevents Rolm from exercising market power (by raising prices over competitive levels) in the service market.

In *Kodak*, of course, the defendant presented this argument as a purely theoretical matter and maintained that it should not be required to present empirical evidence supporting its application to the facts of its case. The Supreme Court rejected this argument for two reasons. First, as noted above, the Court observed

that plaintiffs had presented direct evidence that Kodak had in fact charged supracompetitive prices for parts. Thus, Kodak's theory did not appear to describe the "actual market realities" that were presented in the case. *Kodak*, 504 U.S. at 466, 112 S.Ct. at 2072. The Court then went on to examine the factual assumptions underlying Kodak's theoretical argument, and found that plaintiffs had demonstrated sufficient disputes existed as to whether these assumptions were true to withstand summary judgment.

As the Court noted, "Kodak's proposed rule rests on a factual assumption about the cross-elasticity of demand in the equipment and aftermarkets: If Kodak raised its parts or service prices above competitive levels, potential customers would simply stop buying Kodak equipment." *Id.* at 469, 112 S.Ct. at 2084–85 (internal quotations omitted). The Court specifically mentioned two reasons why this assumption might not hold true in reality. First, the information necessary to engage in accurate lifecycle pricing may be difficult or expensive to obtain. Second, because the initial investment in the durable goods is quite large, the cost of switching to another brand might be greater than the increase in the price of service or parts. In this case, purchasers of a manufacture's brand of equipment would be "locked-in" and would be forced to tolerate some increases in the prices of parts and service. Because of these market imperfections, the Court was not willing to adopt the per se rule proposed by Kodak.

In the instant case, Rolm argues that *Kodak* stands for the proposition that unless a plaintiff presents evidence that information costs and switching costs are high and that the consumers became "locked-in" to their purchases of a durable good, summary judgment is appropriate in a case brought by ISOs against a manufacturer that faces competition in the sale of its goods. The Court disagrees with Rolm's reading of *Kodak*.[11]

---

11. The Court notes, however, that even if it accepted Rolm's reading of *Kodak*, plaintiffs have presented sufficient evidence to withstand defendant's motion for summary judg-

The Supreme Court's discussion of information and switching costs in *Kodak* was offered as "a forceful reason why Kodak's theory, although perhaps intuitively appealing, may not accurately explain the behavior of the primary and derivative markets for complex durable goods." *Kodak*, 504 U.S. at 473, 112 S.Ct. at 2085. Nothing in the discussion suggests that these were the only factors that should be considered in evaluating such an argument. Rather, the opinion makes clear that "[t]he relevant market for antitrust purposes is determined by the choices available to Kodak equipment owners," *id.*, at 482, 112 S.Ct. at 2090, and that "the proper market definition ... can be determined only after a factual inquiry into the commercial realities faced by consumers." *Id.* Contrary to Rolm's assertion, the facts regarding the commercial realties faced by consumers in this case are not undisputed. Rather, plaintiffs have produced evidence from which a reasonable jury could conclude that Rolm has charged supracompetitive prices for service and that Rolm has willfully maintained its ability to charge such prices by adopting business strategies designed to prevent ISOs from competing successfully for the business of Rolm end users. Accordingly, Rolm is not entitled to summary judgment on this ground.

### ii. Interplay Between Antitrust Law and Intellectual Property Rights

Rolm also contends that its intellectual property rights in its proprietary parts and software insulate it from liability under the Sherman Act as a matter of law. This argument requires little discussion.

■ In *Kodak*, the Supreme Court reiterated that "[t]he Court has held many times that power gained through some legal advantage such as a patent, copyright, or business acumen can give rise to liability if 'a seller exploits his dominant position in one market to expand his empire into the next.'" *Kodak*, 504 U.S. at 479 n. 29, 112 S.Ct. at 2089 (quoting *Times–Picayune Publishing Co. v. United States*, 345 U.S. 594, 611, 73 S.Ct. 872, 882, 97 L.Ed. 1277 (1953)). This is precisely what plaintiffs have alleged here. As in *Kodak*, if a jury concludes that Rolm "adopted its parts and service policies as part of a scheme of willful acquisition or maintenance of monopoly power, it will have violated § 2." *Kodak*, 504 U.S. at 483, 112 S.Ct. at 2090. Accordingly, Rolm is not entitled to summary judgment on this ground.

### iii. Essential Facilities Doctrine

■ Rolm next contends it is entitled to summary judgment under the "essential facilities doctrine." Under this doctrine, which has been applied by several federal courts in cases involving allegations of unlawful refusals to deal, a plaintiff is required to prove the following four elements to establish a violation of the Sherman Act: 1) that the "facility" to which the plaintiff has been denied access is essential to competition; 2) that the defendant has refused to allow the plaintiff

---

ment. First, Rolm's own lifecycle expert, John Anderson, testified that he is paid between $7,000 and $60,000 to conduct PBX lifecycle analyses for consumers. Dep. of John Anderson, pp. 309–312. Second, evidence in the record suggests that the average consumer expenditure for a Rolm PBX in 1992 and 1993 was $438,239. Plaintiffs' Brief in Support of Motion for Partial Summary Judgment, Ex. 31 at EDM 002037. This figure is more than twice as much as the expenditure required to purchase the most expensive equipment at issue in *Kodak*, in which the Supreme Court found that there was sufficient evidence of high switching costs to withstand the defendant's motion for summary judgment. Plaintiffs' Opposition to Motion for Summary Judgment, Ex. 229. Finally, regardless of whether Rolm's conduct in January 1990 constituted an announcement of a final policy of refusing to sell parts directly to ISOs, the record contains sufficient evidence to support a finding that, prior to that time, Rolm sold parts directly to ISOs. *See* section II.B.1.a, *supra*. This demonstrates the existence of a genuine issue of material fact on the question of whether end users who purchased Rolm PBXs prior to that time became "locked-in" to their purchases as a result of this change.

access to the facility; 3) that the plaintiff cannot practically or reasonably duplicate the essential facility; and 4) that it is feasible for the defendant to provide access to the facility in light of its stated business goals. *MCI Communications Corp. v. AT & T*, 708 F.2d 1081, 1132–33 (7th Cir.1983). However, the Court finds that this doctrine is not applicable here.

■ The Supreme Court has never explicitly held that a section 2 refusal to deal claim must be analyzed under this doctrine. Although the claims in *Kodak* clearly involved allegations of refusal to deal virtually identical to those presented here, the Court never discussed the doctrine in its opinion, nor was it mentioned in any of the cases cited by the Court. *See Kodak*, 504 U.S. at 483, 112 S.Ct. at 2090–91 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *United States v. Aluminum Co. of America*, 148 F.2d 416, 432 (2nd Cir.1945); *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 600–05, 105 S.Ct. 2847, 2856–59, 86 L.Ed.2d 467 (1985)). Furthermore, in *Aspen Skiing*, the Court affirmed a jury verdict in favor of a plaintiff on a section 2 refusal to deal claim, expressly declining to evaluate the claim under the essential facilities doctrine. *Aspen Skiing*, 472 U.S. at 611 n. 44, 105 S.Ct. at 2862 n. 44 ("Given our conclusion that the evidence amply supports the verdict under the instructions as given by the trial court, we find it unneccessary to consider the possible relevance of the 'essential facilities' doctrine...."). In light of these authorities, the Court finds that plaintiff need only prove the elements set forth at page 5, *supra*,[12] in order to prevail on its claims under section 2.

iv. Business Justification

■ If a plaintiff asserting a claim under section 2 of the Sherman Act establishes a prima facie case of anticompetitive conduct, a defendant can avoid liability by demonstrating that its conduct was justified by valid business reasons. *Aspen Skiing*, 472 U.S. at 605, 105 S.Ct. at 2859. Whether a defendant's conduct was motivated by its proffered reasons is a question of fact, and the plaintiff can rebut the proffered reasons by demonstrating that they are pretextual. *See Kodak*, 504 U.S. at 483–84, 112 S.Ct. at 2091. Thus, the Court's inquiry on a motion for summary judgment on a section 2 claim is very similar to its inquiry on a motion for summary judgment in an employment discrimination case. In such cases, the Eleventh Circuit has long recognized that the defendant's "true motivations are particularly difficult to ascertain, thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir.1993) (internal citations omitted).

Here, defendant has offered two legitimate business justifications for its conduct: 1) its "procompetitive distribution strategy"; and 2) its desire to avoid liability under the Robinson–Patman Act. However, plaintiffs have pointed out specific evidence from which a reasonable jury could infer that neither of these proffered reasons were considered by Rolm when it decided to adopt its restrictive parts and software policies. *See* Plaintiffs' Opposition to Motion for Summary Judgment at 45–49. Accordingly, the Court finds that genuine issues of material fact exist with respect to the question of whether Rolm's proffered business justifications are pretextual.

**12.** To reiterate, the elements for plaintiffs' monopolization claim are: 1) the possession by Rolm of monopoly power in the relevant market; and 2) the willful acquisition or maintenance of that power (as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident). Plaintiffs' attempted monopolization claim consists of three elements: 1) predatory or anticompetitive engaged in by defendant; 2) specific intent to monopolize; and 3) a dangerous probability of achieving monopoly power in the relevant market. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459, 113 S.Ct. 884, 892, 122 L.Ed.2d 247 (1993).

#### v. Testimony of Plaintiffs' Expert

Rolm's final argument in support of its motion for summary judgment is that the deposition of plaintiffs' expert economist demonstrates that his analysis, which is at the heart of plaintiffs' case, is insufficient to support plaintiffs' theory of recovery. The Court disagrees.

Although Rolm disagrees with the conclusions of plaintiffs' expert and has presented expert testimony of its own that reaches a conclusion directly contrary to that of plaintiffs' expert, this fact does not demonstrate that Rolm is entitled to summary judgment. After reviewing the passages of the deposition of plaintiffs' expert that defendant claims are factually deficient, the Court easily concludes that the conflicting testimony of these experts presents genuine issues of material fact that must be resolved by a jury. For these reasons, defendant's motion for summary judgment is DENIED.

#### 2. Plaintiffs' Motion for Partial Summary Judgment

██ Through this motion [386], plaintiffs seek a ruling that, as a matter of law, the relevant market in this case is service of Rolm PBXs. Although plaintiffs' motion is governed by essentially the same standard as set forth above in connection with defendant's motion for summary judgment, plaintiffs' burden is even more onerous than that borne by defendant because plaintiffs bear the burden of proof on this question at trial. *See Celotex,* 477 U.S. at 331–32, 106 S.Ct. at 2557 (Brennan, J., dissenting).[13]

Plaintiffs' argument is based largely on the following dicta from *Kodak:* "The relevant market for antitrust purposes is determined by the choices available to Kodak equipment owners. Because service and parts for Kodak equipment are not interchangeable with other manufacturers' service and parts, the relevant market from the Kodak equipment owner's perspective is composed only of those companies that service Kodak machines." *Kodak,* 504 U.S. at 481–82, 112 S.Ct. at 2090. Although this statement, standing alone, appears to indicate that the Court found that the relevant market was, as a matter of law, limited to service of Kodak machines, the Court, of course, reached no such conclusion. Rather the Court ultimately concluded its opinion by stating that, "[i]n the end, of course, Kodak's arguments may prove to be correct. It may be that its parts, service, and equipment are components of one unified market." *Id.* at 486, 112 S.Ct. at 2092.

In order to withstand plaintiffs' motion for summary judgment, Rolm need only demonstrate that, viewing all of the evidence in the light most favorable to it, a reasonable jury could find that a systems market was the relevant market. There is ample evidence in the record to support such a finding.

For example, in support of their motion, plaintiffs rely heavily on a document entitled "Services Core Business Strategy," which strongly supports a conclusion that Rolm considered service a separate market in which it competes with ISOs and not equipment manufacturers. Plaintiffs' Brief in Support of Motion for Partial Summary Judgment, Ex. 1 at 2015178 ("End users of Siemens Rolm provided communications equipment are the core market.... There are two classes of competition in this market. The first is third party service providers whose primary business competes with Siemens Rolm in all its lines of business."). However, the same document also contains language that would support a finding of a systems market. *Id.* at 2015206 ("This similarity [between service and support 'packages' offered by Rolm and other PBX manufacturers] is critical during the customer's purchase cycle decision, when each manufacturer's products and services are com-

---

**13.** Although Justice Brennan dissented in *Celotex,* he agreed with the majority's analysis of Rule 56. He believed, however, that the majority did not adequately explain what is required of the moving party.

pared and the solution with the most value to the customer is chosen.").

Plaintiffs also argue that the expert opinion presented by defendant on this question is not supported by the facts of this case. However, the Court has carefully reviewed the expert evidence presented by all parties, and finds that the conclusions of each expert are sufficiently supported by the record to render summary judgment on this issue inappropriate. Any discrepancies between their testimony must be resolved by a jury. For these reasons, plaintiffs' motion for partial summary judgment is DENIED.

### C. Defendant's Counterclaims

Defendant has taken an expansive approach in pleading its counterclaims. Although it appears that the crux of its complaint is that plaintiffs unlawfully infringed upon its federally protected intellectual property rights, it has asserted the following counterclaims: declaratory judgment on the issue of copyright validity (Count I); copyright infringement (Counts II and III); patent infringement (Count IV); misappropriation of trade secrets (Count V); false advertising (Count VI); trademark infringement (Count VII); unfair and deceptive trade practices (Count VIII); breach of contract (Counts IX and XIX); tortious interference with contract (Count X); tortious interference with prospective business relations (Count XI); conversion and trover (Count XII); unjust enrichment (Count XIII); unfair competition (Count XIV); computer fraud/tampering/trespass (Count XV); product disparagement (Count XVI); for price of reasonable value of goods and services (Count XVII); quantum meruit (Count XVIII); and for an account stated (Count XX). Plaintiff now seeks summary judgment on all of these claims, and defendant seeks partial summary judgment on its claims for copyright infringement with respect to its software (Count II and parts

of Count III). The Court will address defendant's motion first.

### 1. Defendant's Motion for Partial Summary Judgment

Rolm alleges that plaintiffs infringed upon its software copyrights in four distinct ways. First, Rolm complains that plaintiffs are guilty of "distribution infringement." The essence of this complaint is that plaintiffs, who are not licensed users of Rolm's proprietary software, have failed to comply with the formalities regarding the transfer of a software license contained in the license agreements executed by Rolm and end users. Specifically, defendant alleges that plaintiffs have purchased PBXs, which include Rolm's proprietary software, from end users and sold them to other end users without complying with these formalities.

Next, defendant accuses plaintiff of "mix and match copying infringement" by copying proprietary software installed on one PBX and installing it onto other PBXs [14] in violation of Rolm's software license, which only permits an end user to install software on a single PBX, and federal copyright law.

Defendant also complains of "feature activation infringement." These claims are based on the fact that Rolm's software includes certain features for PBXs that permit the PBXs to perform certain functions. Although all PBXs have the capability of performing these functions, the functions will only operate if they are activated by Rolm or an ISO. Rolm will only activate those features for which the end users have paid. Rolm contends, however, that plaintiffs have unlawfully activated features for their customers for which Rolm has not been paid.

Finally, defendant complains of "computer copying infringement." These claims are based on the fact that several routine maintenance tasks for Rolm PBXs

---

14. Although all PBXs come with software installed, Rolm periodically produces "upgraded" software that works with the same PBX system. Plaintiffs are accused of providing their customers with these upgrades by copying them from other customers.

require that software be "reloaded" into the PBXs Random Access Memory ("RAM"). For example, whenever the power supply to the PBX is interrupted, software must be reloaded into the RAM before it will work properly. Rolm maintains that every time an ISO performs one of these maintenance tasks that requires reloading of the RAM, the ISO is making an unauthorized "copy" of the software. Rolm asserts that it is entitled to summary judgment on all of these claims.

The standard governing a motion for summary judgment was set forth above. *See* pp. 1311–12, *supra.* As the Court explained previously, defendant, as the party that bears the burden of persuasion on these issues at trial, bears an even greater burden than it did in connection with its motion for summary judgment on plaintiffs' antitrust claims.

In order to prevail on its claims of software copyright infringement, Rolm must establish: 1) that it owns a valid copyright in the work allegedly infringed; and 2) that the ISOs "copied" that work by infringing upon any of the five exclusive rights established by the copyright. *Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc.,* 785 F.2d 897, 903 (11th Cir.1986). The Court need not delve too deeply into the merits of Rolm's claims because the Court finds that the ISOs have produced evidence sufficient to establish the existence of a genuine issue of material fact with respect to the first element of Rolm's claims.

■ Although Rolm relies on its certificates of registration-obtained in September 1994, after the initiation of this litigation—as prima facie evidence of the validity of its copyrights, under 17 U.S.C. § 401(c), a certificate of registration constitutes prima facie evidence of validity only if it is "made before or within five years after first publication of the work." Plaintiffs contend that Rolm did not obtain registration for all of its software titles within five years of the public distribution of the software and that Rolm, therefore, is not entitled to summary judgment on these claims.[15] Rolm counters that there has never been a "publication" of its software titles within the meaning of the Copyright Act. Rather, it argues, its distribution of the software to Rolm distributors and end users constitutes, at most, a "limited publication," which does not fall within the definition of "publication" contained in 17 U.S.C. § 101.

A district court in California was recently presented with a strikingly similar scenario. In *Bell Atlantic Business Sys. Servs., Inc. v. Hitachi Data Sys. Corp.,* No. C 93–20079 JW, 1995 WL 836331, (N.D.Cal. Dec. 14, 1995), the plaintiff was an independent service provider that serviced computer equipment, including direct access storage devices manufactured by the defendant. The plaintiff asserted antitrust claims against the defendant, and the defendant filed a counterclaim for copyright infringement based on the plaintiff's allegedly unlawful copying of the defendant's software. In support of its motion for summary judgment on the copyright infringement claim, the plaintiff argued that the defendant could not establish its ownership of a valid copyright because the defendant's distribution of its software constituted "publication." As in this case, the defendant responded that its distribution only constituted "limited publication."

■ As the court in *Hitachi Data* noted, a distribution is considered a "limited

---

**15.** The Court recognizes that plaintiffs only contend that "Rolm failed to obtain registration until more than five years after *almost every* software title had been publicly distributed." Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment at 5 (emphasis added). Therefore, it appears that plaintiffs concede that at least some of the registrations constituted prima facie evidence of validity. However, as the moving party with respect to this motion, Rolm bears the burden of demonstrating that it is entitled to judgment as a matter of law on each of its claims, and it has not attempted to break down its claims with respect to each of the nineteen software titles it alleges that plaintiffs infringed.

publication" for copyright purposes if the work is only shown to a limited class of persons for a limited purpose, without the right of further reproduction, distribution, or sale. *Id.* at *5 (citing *Academy of Motion Picture Arts and Sciences v. Creative House,* 944 F.2d 1446, 1452 (9th Cir. 1991)). *See also Brown v. Tabb,* 714 F.2d 1088, 1091 (11th Cir.1983). After examining the record before it, the court noted that the evidence would support a finding that the software was made available only to a limited class of persons, that the end users did not own the copies of the software that accompanied their purchase of the hardware manufactured by the defendant, and that the defendant placed strict restrictions on the access and use of the software by distributors of the hardware. *Hitachi Data Sys.,* 1995 WL 836331, at *5, *6. Accordingly, the court concluded that "a triable issue of material fact exists as to whether the distribution of [the software] by Hitachi constituted a limited publication." *Id.* at *6.

The analysis applied in *Hitachi Data Sys.* is equally applicable here. Although Rolm urges the Court to determine, as a matter of law, that the distribution of its software constituted no more than a "limited publication," based on the record before it, the Court finds that this question is more appropriately resolved by a jury. Consequently, Rolm's motion for partial summary judgment on its counterclaims is DENIED.

**2. Plaintiffs' Motion for Summary Judgment**

As noted above, plaintiffs have moved for summary judgment on the entirety of the counterclaims, offering several arguments in support of their motion.[16] As an initial matter, the Court notes that defendant has chosen not to respond to some of these arguments. For example, defendant has offered no response to: 1) plaintiffs' argument that there is no basis for defendant's fraud/tampering/trespass claim (Count XV); 2) plaintiffs' argument that there is no basis for defendant's copyright and patent infringement claims against Start Technologies Corporation, Olde York Valley Inn, or DD Hawkins Communications, Inc. (Counts II, III, and IV); 3) plaintiffs' argument that applicable state law does not recognize a claim for product disparagement (Count XVI); or 4) plaintiffs' argument that there is no evidence to support defendant's claim for tortious interference with contract (Count X).[17] Accordingly, the Court finds that plaintiffs are entitled to summary judgment on these claims.

**a. Patent Claims**

In support of their motion for summary judgment with respect to these claims, plaintiffs argue that Rolm has exhausted its patent rights by selling PBX systems that contained the patented inventions and that Rolm's patents are invalid. In response, defendant maintains that it has not exhausted its patent rights because its sales of the PBX systems were conditional or restricted sales or licenses. This argument is similar to the "limited publication" issue discussed above. As the Court concluded with respect to that issue, genuine issues of material fact preclude the entry of summary judgment on this ground.[18]

---

**16.** The standard governing this motion is set forth above. *See* pp. 1311–12, *supra.*

**17.** The Court recognizes that defendant did respond to plaintiffs' initial attack on the sufficiency of its evidence with respect to Count X, directing the Court to the "numerous issues of fact presented by each element of that claim" allegedly demonstrated by defendant's statement of material facts that were in dispute. However, plaintiffs' specifically at-

tacked the sufficiency of the evidence cited by defendant in their reply brief, and although the Court allowed defendant to file a surreply in support of its opposition to this motion, defendant did not respond to this attack therein.

**18.** Plaintiffs offer an additional, "closely related" argument that defendant has granted them an implied license with respect to the patents-in-suit. This inquiry is also fact-inten-

Furthermore, Rolm's patents are presumed to be valid, and plaintiffs bear the burden of proving otherwise by clear and convincing evidence. 35 U.S.C. § 282; *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed.Cir.1986). On the record before it, the Court cannot say that, as a matter of law, plaintiffs have carried this burden. Accordingly, their motion for summary judgment is DENIED with respect to these claims.

### b. Copyright Claims

As noted above, defendant has asserted copyright infringement claims arising out of four distinct types of conduct. Plaintiffs' primary argument in support of its motion for summary judgment with respect to these claims is that they are barred by the doctrine of "copyright misuse," which the plaintiffs describe as a defense that "forbids the use of a copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office." *See Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 977–79 (4th Cir. 1990). Essentially, plaintiffs' contend that Rolm's "computer copying" infringement claim is so lacking in merit, that Rolm's prosecution of this claim constitutes an abuse of its property rights, and that the equitable remedy for this abuse is to prevent Rolm from recovering for any of its infringement claims.

This argument has two major flaws, however. First, the Eleventh Circuit has not recognized the defense of "copyright misuse."[19] Second, regardless of whether this Court ultimately accepts the validity of Rolm's "computer copying" claim, at least one federal court of appeals has already done so. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th

Cir.1993). Thus, even if the Court were inclined to recognize a "copyright misuse" defense, such a defense would not be appropriate because the Court cannot conclude that Rolm's claims are "objectively meritless" in light of the Ninth Circuit's decision in *MAI Sys. Corp., See In re Independent Serv. Org. Antitrust Litigation*, 964 F.Supp. 1479, 1491 (D.Kan.1997) (misuse defense based on the filing of suit not authorized unless claims are objectively meritless).

Nonetheless, the Court agrees with plaintiffs that defendant's "computer copying" claims fail as a matter of law. Under 17 U.S.C. § 117,

> [I]t is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided:
>
> (1) that such a new copy or adaptation is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner, or
>
> (2) that such a new copy or adaptation is for archival purposes only and that all archival copies are destroyed in the event that continued possession should cease to be rightful.

Congress passed section 117 knowing that computer users would need to make copies of computer software in order to utilize that software. *Aymes v. Bonelli*, 47 F.3d 23, 26 (2nd Cir.1995) (citing H.R.Rep. No. 1307, 96th Cong., 2d Sess., Pt. I, at 23 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6482). Thus, section 117 provides a legitimate holder of a computer program with permission to do that copying of the

---

sive, and the Court finds that summary adjudication of this issue is not appropriate based on the record before it.

**19.** Contrary to plaintiffs' assertion, the Eleventh Circuit has not "acknowledged that copyright misuse could in an appropriate case be used as a defense to discipline those who abuse their copyrights." As an initial matter, the Court notes that the case that plaintiffs

cite for this proposition, *Bellsouth Advertising & Publishing Corp. v. Donnelley Information Publishing*, 933 F.2d 952 (11th Cir.1991) was vacated en banc. Furthermore, although the vacated opinion stated that the judicially recognized patent misuse defense might someday be extended to copyright law, the court expressly declined to do so in that case. *Id.* at 961.

program which is necessary for him to be able to use it in his computer without running afoul of possible infringement actions.

Rolm does not challenge plaintiffs' contention that the maintenance tasks that form the basis of the "computer copying" claims fall within the scope of activity covered by section 117. Rather, it argues that section 117 is inapplicable to these claims because plaintiffs' end user customers are not "owners of a copy of" Rolm's software within the meaning of the statute. The Court disagrees.

In support of its position, Rolm notes that it licenses its software to end users and expressly retains ownership of all copies. This fact, however, "does not preclude a finding that the [end users] are 'owners of a copy' for purposes of section 117." *DSC Communications v. Pulse Communications, Inc.*, 976 F.Supp. 359, 362 (E.D.Va.1997). Rather, as the court noted in *DSC Communications*, "[i]t is necessary to determine ownership of the copy, not whether the transaction ... involved a license to use the program." *Id.*

In making its determination that the holders of the software were "owners" within the meaning of section 117, the court in *DSC Communications* noted that, "the transaction involves a single payment, giving the buyer an unlimited period in which it has a right to possession, making [the] transaction a sale." *Id.* The Court finds this analysis persuasive,[20] and its application to the instant case leads to the

same conclusion; because Rolm's software license is granted for the life of the system and the initial purchaser pays one price for the software when it buys its PBX system,[21] the Court finds that Rolm's end users are "owners" within the meaning of section 117. Furthermore, because section 117 allows "owners" to "authorize the making of another copy" of a computer program, plaintiffs are also entitled to the protections of section 117 since they were acting on behalf of their customers when they committed the alleged infringements. Accordingly, plaintiffs' are entitled to summary judgment on these claims.

Plaintiffs' remaining arguments regarding Rolm's other copyright claims are not persuasive, however. Although plaintiffs assert defenses of estoppel and implied license with respect to Rolm's distribution infringement claims, the applicability of these fact-intensive defenses to this action cannot be resolved as a matter of law based on the record that is before the Court.[22] Similarly, the fact that less than four percent of the ISO transactions had a "mismatch" problem does not indicate that plaintiffs are entitled to judgment as a matter of law on these claims. Finally, other than the misuse argument that the Court rejected above, plaintiffs have not offered any arguments in support of their motion with respect to Rolm's "feature activation" claims.

c. State Law Claims

Plaintiffs also maintain that Rolm's claims for misappropriation of trade se-

---

**20.** The Court recognizes that some courts have reached the contrary conclusion on this issue. *E.g., MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir.1993) (software licensee not "owner" for purposes of section 117); *Advanced Computer Servs. of Mich., Inc. v. MAI Sys. Corp.*, 845 F.Supp. 356 (E.D.Va. 1994) (same); *CMAX/Cleveland, Inc. v. UCR, Inc.*, 804 F.Supp. 337 (M.D.Ga.1992) (same). Many of these decisions, however, have been criticized in one of the leading treatises on copyright law. *See* 2 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 8.08[B][1] & nn. 37–38.1 (1998). The Court notes that defendant has cited this treatise as authoritative on at least one occasion in this litigation.

**21.** Although Rolm notes that its software license provides that any "modifications to, or new releases or versions of, the software will be provided subject to this Agreement at applicable charges," this does not change the fact an end user only pays a single price for each copy of software that is licensed to it under the agreement.

**22.** For example, while plaintiffs argue that Rolm does not enforce the formalities relating to transfer that are contained in its licensing agreement, this is clearly a question for the jury.

crets (Count V), breach of contract (IX), tortious interference with prospective business relations (Count XI), conversion (Count XII), and unjust enrichment (Count XIII) are preempted by the Copyright Act. *See* 17 U.S.C. § 301. The Court agrees with defendant that this argument is without merit with respect to portions of Count V that relate to passwords and customer information, as well as Counts XII and XIII, which relate to such matters as the alleged theft of items not covered under any copyright, such as customer lists.

However, Rolm concedes that its claims for breach of contract and tortious interference "are preempted to the extent they are premised on acts that counterdefendants now concede implicate Siemens Rolm's exclusive rights under the Copyright Act." Defendant's Opposition to Motion for Summary Judgment on Counterclaims at 25. Accordingly, Rolm states that it is willing to withdraw these claims on the condition that plaintiffs are barred from contesting the application of the Copyright Act to the conduct at issue. Plaintiffs, however, have refused to agree to not contest the application of the Copyright Act, and Rolm, therefore, has not withdrawn these claims.

 The fact that Rolm has offered to withdraw its claims is not dispositive on the question of preemption. Under the law of this circuit, to determine whether a state law claim is preempted by the Copyright Act, the Court must decide "whether the rights at issue fall within the 'subject matter of the copyright' set forth in sections 102 and 103 and whether the rights at issue are equivalent to the exclusive rights of section 106." *Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 913–914 (11th Cir.1986). With respect to the first prong of this test, it is clear that the software

and other "intellectual property" at issue in these claims fall within the "subject matter of copyright." However, under the second prong of the test, the Court must determine whether the state law claim requires an "extra element" for recovery, because "[a] state law claim is not preempted if the 'extra element' changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1549 (11th Cir.1996) (emphasis in original) (quoting *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693, 716 (2nd Cir.1992).)

 Under this analysis, it is clear that Rolm's breach of contract claim, which alleges that plaintiffs used Rolm software in a manner inconsistent with the terms of the licensing agreements and by failing to comply with the provisions governing the assignment or transfer of rights and duties established under the agreements, is not preempted. *See National Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 433 (8th Cir.1993) ("The contractual restriction on use of the programs constitutes an extra element that makes this cause of action qualitatively different from one for copyright."). The same is true for Rolm's tortious interference claim, which also alleges that plaintiffs violated the terms of Rolm's software license. Accordingly, the Court finds that these claims are not preempted.[23]

#### d. Trademark Claims

 Rolm has asserted a number claims under both state and federal law relating to plaintiffs' allegedly unlawful use of the Rolm name in advertisements. At the center of these claims is Rolm's allegation that plaintiffs have used the Rolm mark in a way that creates a substantial

---

**23.** The Court notes, however, that if, in fact, the plaintiffs are not bound by Rolm's software license, then these claims would be preempted under the Copyright Act because the claims would essentially amount to allegations that plaintiffs did something that the copyright laws reserve exclusively to Rolm,

such as unauthorized reproduction, distribution, or display. *See American Movie Classics Co. v. Turner Entertainment Co.*, 922 F.Supp. 926, 931 (S.D.N.Y.1996) (also noting that an action will not be saved from preemption by elements such as intent, which alter the action's scope but not its nature).

likelihood of confusion among consumers concerning the relationship between Rolm and the ISOs. For example, Rolm complains that plaintiffs include the Rolm mark in their promotional materials and that plaintiffs advertise that they employ "Rolm-certified" technicians without disclosing the fact that these technicians do not receive ongoing training by, or approval from, Rolm. Plaintiffs do not dispute that they engage in these practices. Rather, they argue that these practices are not likely to cause confusion among consumers. However, "[l]ikelihood of confusion is a factual matter," *Versa Products Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 200 (3rd Cir.1995), and the Court cannot conclude, on the record before it, that no reasonable jury could find that a likelihood of confusion exists.[24] Accordingly, summary judgment is not appropriate.[25]

### e. Trade Secret Claims

■ Plaintiffs next contend that they are entitled to summary judgment on Rolm's misappropriation of trade secrets claim (Count V) because the uncontroverted evidence demonstrates that Rolm did not make reasonable efforts to maintain the secrecy of its purported trade secrets and there is no evidence of misappropriation. However, the record materials cited in Rolm's response brief and its response to plaintiffs' statement of material facts not in dispute make clear that genuine issues of material fact exist with respect to the extent of the efforts employed by Rolm to maintain the secrecy of the materials at issue and whether plaintiffs misappropriated any of these materials. Defendant's Opposition to Motion for Summary Judgment on Counterclaims at 23–24; Defendant's Response to Plaintiffs' Statement of Material Facts Not in Dispute at ¶¶ 58–59. Accordingly, plaintiffs' motion for summary judgment is DENIED with respect to these claims.[26]

### f. Claims for Money Due and Owing

■ Under Counts XVII through XX, Rolm seeks to recover debts allegedly owed to it by Realcom Office Communication ("Realcom") and Olde York Valley Inn ("Olde York"). These plaintiffs contend they are entitled to summary judgment on these claims for different reasons. First, Realcom Office Communication argues that these claims are barred by the doctrine of accord and satisfaction. However, Rolm denies that such a settlement was entered or that it received any payment. Although there is strong evidence in the record suggesting that a debt was settled by a payment of $15,403.64 in 1994, the amount of the debt that was allegedly settled by that does not precisely conform to the amount alleged in the counterclaim. *Compare* Counterclaim, ¶ 181 *with* Aff. of Marla Buckman, ¶ 3, Plaintiffs' Brief in Support of Motion for Summary Judgment on Counterclaims, Ex. 30. In light of this factual dispute, the Court cannot grant summary judgment on this claim.

---

**24.** The question of likelihood of confusion is central not only to Rolm's claims under the Lanham Act, but also to its claims under Georgia law. *See University of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1539 n. 11 (11th Cir.1985).

**25.** The Court recognizes that plaintiffs alternatively contend that they are entitled to summary judgment on the issue of damages because such an award under the Lanham Act requires a showing of actual confusion, which plaintiffs claim is lacking here. *See Web Printing Controls Co. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1204–05 (7th Cir.1990). Although the Court agrees that there is little evidence of actual confusion in the record before it, de-

fendant has also moved for injunctive relief under the Lanham Act, which requires only a showing of likelihood of confusion. In light of the factual issues that exist on this question, the Court will not preclude defendant from attempting to establish actual confusion at trial.

**26.** In further support of their contention that the materials were not "trade secrets," plaintiffs argue that the materials were readily available from third-parties. Assuming this to be true, however, plaintiffs have not cited any binding authority for the proposition that this fact precludes recovery for misappropriation of trade secrets as a matter of law.

 Similarly, factual disputes preclude summary judgment on defendant's claims against Olde Valley. Although Olde York contends that it was fraudulently induced into entering its service contract with Rolm by a statement made by a Rolm representative to the effect that Rolm was the only company that could provide service for its PBXs, Olde York has not identified the name of the Rolm employee that allegedly made this statement, and Rolm disputes that this statement was ever made. This factual dispute must be resolved by a jury.

### III. CONCLUSION

For the aforementioned reasons, defendant's motion for leave to file surreplies [407] is GRANTED, and plaintiffs' motion to strike the expert report and testimony of Miles Alexander [392] is DENIED. Defendant's motion for summary judgment on plaintiff's antitrust claims [384] is DENIED, as is its motion for partial summary judgment on its copyright counterclaims and permanent injunctive relief [385–1, 385–2]. Plaintiffs' motion for partial summary judgment on their antitrust claims [386] is also DENIED. Plaintiff's motion for summary judgment on defendant's counterclaims [387] is GRANTED IN PART and DENIED IN PART.[27]

The Court reminds the parties that "[m]otions for reconsideration shall not be filed as a routine practice." Local Rule 7.1E. Any frivolous motions for reconsideration filed concerning this order will be met with severe sanctions.

It is so ORDERED.

---

**27.** Plaintiffs' motion is granted with respect to Count X, Count XV, Count XVI, the claims asserted against Start Technologies Corporation, Olde York Valley Inn, and DD Hawkins Communications, Inc. in Counts II, III, and IV, and defendant's claims for "computer copying infringement." It is denied with respect to all other claims.