**Donald Lee TIPTON, Linda Tipton, his wife, Plaintiffs–Appellants,**

v.

**BERGROHR GMBH–SIEGEN, a German Corp., Bergrohr GMBH–Herne, a German Corp., Defendants–Appellees,**

**G.L. Rexroth GMBH, a German Corp., Defendant,**

**S.E. "Siggy" Koehle and H.L. Goode, Third–Party Defendants.**

No. 90–3677.

United States Court of Appeals, Eleventh Circuit.

July 8, 1992.

Rehearing and Rehearing En Banc Denied Sept. 4, 1992.

William A. Bald and Stephen J. Pajcic, III, Jacksonville, Fla., for plaintiffs-appellants.

Lynn C. Higby, and Harry L. Harper, Bryant, Higby & Williams, Panama City, Fla., for Bergrohr GMBH–Siegen and Bergrohr GMBH–Herne.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and HENDERSON, Senior Circuit Judge.

TJOFLAT, Chief Judge:

The district court granted appellees summary judgment in this products liability and negligence action,[1] concluding that appellants had failed to present a triable issue of fact for the jury. We agree that appellants have no case, and affirm.

I.

On June 30, 1987, Donald Tipton brought this action[2] against the two German corporations, Bergrohr GMBH–Siegen (Siegen) and Bergrohr GMBH–Herne (Herne), that designed the "sizer" machine[3] at the Berg Steel Pipe Corporation (BSPC) in Panama City, Florida. His complaint alleged that on August 13, 1986, as Tipton was standing near the sizer machine to assist in changing its several-ton rollers, the sizer's arms opened before the roller was secured to the crane and, as a result, the roller fell out and crushed Tipton's foot. He brought two claims, each in a separate count, against Siegen and Herne: (1) the defendants were liable for the defective design and manufacture of the sizer machine,[4] and (2) the defendants were liable under negligence principles for their undertaking to ensure the safe operation of the sizer machine.[5]

The defendants' answer denied all of Tipton's allegations and, after two years of discovery, they moved the court for summary judgment on all counts. In support of their motion for summary judgment, the defendants presented the depositions of several executive officers of Siegen, Herne, and BSPC, who testified that Siegen and Herne were in the business of making steel pipe, not sizer machines.[6] In addition, they

---

1. This action began in Florida circuit court and was removed to the district court. See 28 U.S.C. § 1441 (1988).

2. Tipton's wife, Linda Tipton, joined him as a party plaintiff, seeking consequential damages, e.g., for loss of consortium. We refer to the Tiptons collectively as Tipton.

3. A sizer machine straightens and rounds steel pipe.

4. Count I of the complaint alleged in pertinent part:

   11. As designed and manufactured by [Siegen] and/or [Herne], the sizer was unreasonably dangerous to the user in the following respects:

   A. The sizer was equipped with controls which created an unreasonable risk that the control which opens the sizer arms would inadvertently be activated by the operator.

   B. The sizer was equipped with controls which created an unreasonable risk that the control which opens the sizer arms would be inadvertently left in an open position.

   C. The sizer was designed with controls which permitted the sizer arms to open upon the activation of controls intended to operate other parts of the sizer.

   D. The sizer was not equipped with any audible or visual warning system that would warn persons in the vicinity of the sizer that the arms were open or were about to open.

   E. The sizer lacked written warnings and operating instructions to warn the operator concerning the danger of opening the arms before the roller is secured to the crane.

In his memorandum opposing summary judgment, Tipton alternatively styled this claim under sections 395 (negligent design or manufacture) and 402A (strict liability) of the Restatement (Second) of Torts (1965). See infra n. 8.

5. Count II of the complaint alleged in pertinent part:

   15. After designing, manufacturing, assembling, selling and delivering the sizer, [Siegen] and/or [Herne] undertook to observe the sizer in operation at the Berg Steel Pipe plant and to make any adjustments or alterations necessary to insure [sic] the safe operation of said the [sic] sizer.

   16. [I]n undertaking to make alterations and adjustments after delivery, [Siegen] and/or [Herne] had a duty to use reasonable care.

   17. [Siegen] and/or [Herne] breached that duty. . . .

Count II of the complaint then proceeded to repeat the same five design defects listed in count I, para. 11, A–E, see supra n. 4, as evidence of the defendants' breach of duty to ensure the safe operation of the sizer machine. See also infra n. 9.

6. The following persons testified that Siegen and Herne only built machines, which included the three sizers at Siegen, Herne, and BSPC, for "our own use": Fitz Berg, chief executive officer of Siegen; Heinrich Berg, the technical manager of Siegen; Rudolph Sprey, the designer of the sizer at Herne and at BSPC, and the head of Herne's machine construction department; John Peters, the chief financial officer of BSPC. Tipton presented no testimony to the contrary.

presented the affidavit of the chief financial officer of BSPC, John Peters, who stated that Siegen, Herne, and BSPC were all closely held corporations and subsidiary units of the larger Berg Family Estate and Trusts. Siegen and Herne therefore argued that their design of BSPC's sizer machine was, in effect, only for "in-house" use. As so characterized, they contended, any theory of products liability against Siegen and Herne must fail because Florida law clearly requires the manufacturer to be in the business of and gain profits from distributing and selling the product in question through the stream of commerce.[7] In this case, they concluded, Siegen and Herne were not in the business of selling or distributing sizer machines and, specifically, there had been no sale of the sizer, or its design, to BSPC.

In opposing summary judgment, Tipton argued that Siegen and Herne were liable as the designers of the sizer machine both under sections 395 and 402A of the Restatement (Second) of Torts (1965).[8] He did not contest that Florida law required the injured party to show that there had been a sale of the product in question; rather, he argued that because Siegen, Herne, and BSPC were separate corporations, and since the transfer of the design was for "an economic purpose"—not for Siegen's or Herne's own use—that the exchange of the sizer's design in this case was a "sale." Alternatively, Tipton argued that Siegen and Herne were liable under section 324A of the Restatement (Second) of Torts for their failure to use reasonable care in undertaking to ensure the safe operation of the sizer machine.[9]

7. Both parties conceded that Florida law governed this diversity action. Florida law has adopted three theories of manufacturer's liability: negligent design or manufacture, breach of implied warranty, and strict liability. In their motion for summary judgment, Siegen and Herne argued that Florida law required the injured party to show that the manufacturer was in the business of selling or distributing the product in question through the stream of commerce under all three theories of manufacturer's liability. *See, e.g., Lane v. International Paper Co.,* 545 So.2d 484, 486 (Fla.App. 1 Dist. 1989) ("On any theory of products liability, whether it be for negligent design or manufacture of the product, for breach of implied warranty, or strict liability, in order for the manufacturer to be liable the injured party must show that the manufacturer is in the business of and gains profits from the distribution and sale of the product through the stream of commerce."); *Johnson v. Supro Corp.,* 498 So.2d 528, 528–29 (Fla.App. 3 Dist.1986) (same).

8. Section 395 of the Restatement (Second) of Torts provides in pertinent part:

A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it ... is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

Restatement (Second) of Torts § 395 (1965). Section 402A of the Restatement provides in pertinent part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to

the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965); *see also West v. Caterpillar Tractor Co.,* 336 So.2d 80, 86 (Fla.1976) (adopting the strict liability doctrine of section 402A of the Restatement).

9. Section 324A of the Restatement (Second) of Torts provides in pertinent part:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm,....

Restatement (Second) of Torts § 324A (1965); *see also State of Florida, Depart. of Highway Safety v. Kropff,* 491 So.2d 1252, 1255 (Fla.App. 3 Dist.1986) (listing Florida cases adopting section 324A of the Restatement).

In opposing summary judgment, and again on appeal, Tipton attempted to reintroduce his negligent design claim against Siegen and Herne under section 324A of the Restatement (Second) of Torts, a "general" cause of action not requiring the sale of the product in question, in an effort, we believe, to avoid the burden of proving that there was a sale of the sizer or that Siegen and Herne were in the business of making sizer machines. Because under Florida law

On May 25, 1990, the district court granted the defendants' motion for summary judgment. Accordingly to the court, the record clearly showed that there had been no sale of the sizer machine or its design. Furthermore, the court likened this case to the situation in which a company manufactures equipment for its own use, not for consumers; consequently, the court reasoned, under Florida's products liability law the defendants were not liable. The court therefore concluded that Tipton had failed to create a genuine issue of material fact regarding an essential element of his claims, and given no just reason for delay, the district court entered final judgment in favor of the defendants on July 17, 1990,[10] without ever addressing the issue of the defendants' alleged failure to ensure the safe operation of the sizer machine.[11] Tipton now appeals.

## II.

### A.

    Our review of the district court's grant of summary judgment is plenary and is to be conducted utilizing the same legal standards as those imposed upon the district court. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir.1990). The party moving for summary judgment bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). An issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

    Once the moving party meets this initial burden, summary judgment is then appropriate as a matter of law against the nonmoving party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. In making a sufficient showing, the nonmoving party must "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). In opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In

---

it is an essential element of a negligent design claim that the manufacturer be in the business of making the defective product in question, *see supra* n. 7, we construe the oblique mention of section 324A in Tipton's opposing memorandum properly to refer to the earlier allegation contained in count II of his complaint, to wit: that Siegen and Herne had undertaken to render the service (for BSPC) of ensuring the safe operation of the sizer machine, *see supra* n. 5.

**10.** Tipton had amended his original complaint to include an additional German corporation as a defendant, G.L. Rexroth GMBH, the designer of the hydraulic valves for the sizer machine. The court therefore entered final judgment in favor of Siegen and Herne pursuant to Fed. R.Civ.P. 54(b) (1988).

**11.** Perhaps the unartful language of Tipton's opposing memorandum, *see supra* n. 9, as well as the repetitive listing of the same design defects in both counts I and II of his complaint, *see supra* nn. 4 and 5, led the court to view the first count of the complaint as a products liability claim based on strict liability, and to view the second count as merely another products liability claim based on negligent design. As so construed, all of Tipton's claims failed for lack of the essential element of a "sale." *See supra* n. 7. To establish a claim based on general negligence principles, however, such as Tipton's claim that the defendants failed to use reasonable care to ensure the safe operation of the sizer, it is not necessary to establish a "sale." *See infra* part II B.

reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). If, so viewed, a rational trier of fact could find a verdict for the nonmoving party under the substantive evidentiary standard, the non-moving party can defeat summary judgment. *Id.* 477 U.S. at 252, 106 S.Ct. at 2512.

#### B.

■ With these legal standards in mind, the sole issue worthy of our extended consideration [12] is whether the district court properly could have found Siegen and Herne negligent for failing to ensure the safe operation of the sizer machine. Tipton has the burden of proof at trial of showing the following elements: (1) that Siegen and Herne assumed the duty to ensure the safe operation of the sizer machine, (2) that they failed to use reasonable care in performing that duty, and (3) that their failure was the proximate cause of Tipton's injuries or "increase[d] the risk of such harm," *see supra* note 9. Each element is essential to Tipton's negligence claim and in making a sufficient showing on each element for the purposes of defeating summary judgment, Tipton cannot rest on the allegations in his complaint.

The record viewed as a whole and in the light most favorable to Tipton, however, does not present a scintilla of reliable evidence as to how the accident occurred. First, the record does not contain an eye-witness account of how the accident happened; neither Donald Tipton, nor his co-worker on the sizer machine, were deposed. Second, the record contains no depositions, no affidavits, no answers to interrogatories, and no admissions of fact, by any person with personal knowledge, setting forth such facts as would be admissible as evidence, *see* Fed.R.Civ.P. 56(e), concerning how the accident took place or describing what adjustments or alterations, if any, Siegen and Herne made, or should have made, to ensure the safe operation of the sizer machine.

■ The only account of the accident, besides the account alleged in Tipton's complaint, comes from Tipton's employer, S.E. Koelhe. Koelhe testified in his deposition that BSPC's investigating committee concluded that the accident was caused by the activation of the hydraulic valve, which opens the pins holding the upper roller, before the roller was properly secured to its holding crane as required by the company's roller-change procedures. Koelhe's account, of course, is rank hearsay and is not admissible as evidence. *See* Fed. R.Evid. 801, 802 (1990). Moreover, assuming for the sake of argument that it is admissible, Koelhe's testimony makes no mention of any adjustments or alterations that Siegen and Herne made, or should

**12.** On appeal, Tipton also claims that the district court erred in finding that the transfer of the sizer's design was not a sale but, rather, only for "in-house" use. He argues that Florida law treats separate corporations as separate legal entities and that Siegen, Herne, and BSPC are separate corporations. He therefore contends that the exchange of the sizer's design from Siegen and Herne to BSPC, in passing from one separate corporation to another, took place in the stream of commerce. As so viewed, he concludes, Siegen and Herne are liable under Florida's products liability law for their negligent design of the sizer machine.

Even if we assume that the transfer of the sizer's design took place in the stream of commerce, Tipton still has made no showing of the

essential element in all products liability claims under Florida law, to wit: that the manufacturer *"is in the business of and gains profits from"* distributing or selling the product in question. *See Lane,* 545 So.2d at 486 (emphasis added); *Supro,* 498 So.2d at 529; *West,* 336 So.2d at 86. All the evidence in the record confirms that Siegen and Herne were in the business of making steel pipe, not sizer machines, *see supra* n. 6. In sum, whether the district court's finding that the exchange of the sizer's design was not in the stream of commerce is correct is irrelevant to the correctness of the court's further finding, with which we agree, that Tipton's negligent design claim fails because he made no showing that Siegen and Herne were in the business of making sizer machines.

have made, to ensure the safe operation of the sizer.

It follows that without an admissible account in the record as to how the accident took place, even assuming *arguendo* that Siegen and Herne owed a duty to BSPC's employees to ensure the safe operation of the sizer machine, we have no way of knowing whether Siegen's and Herne's adjustments or alterations to the sizer, or the lack thereof, caused Tipton's injuries. In sum, without a reliable account of how the accident occurred, no reasonable trier of fact could· find that Siegen and Herne breached a duty owed to Tipton or that their breach caused Tipton's injuries. Tipton therefore has failed to establish essential elements of his case, on which he bears the burden of proof at trial, and, accordingly, summary judgment is appropriate as a matter of law against him. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

### III.

For the foregoing reasons, we affirm the district court's summary judgment.

IT IS SO ORDERED.