TELECOMM TECHNICAL SER-
VICES, INC., et. al, Plain-
tiffs/Counterdefendants

v.

SIEMENS ROLM
COMMUNICATIONS, INC.,
Defendant/Counterplaintiff,

No. CIV. A. 1:95CV649WBH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 10, 2000.

John Kirk Train, III, Michael P. Kenny, John Philip Fry, Patrick J. Flinn, William H. Jordan, Keith Edward Broyles, Alston & Bird, Atlanta, GA, Mark C. Hansen, phv, Michael K. Kellogg, phv, Steven F. Benz, phv, Austin C. Schlick, phv, William B. Petersen, phv, Kellogg Huber Hansen Todd & Evans, Washington, DC, Robert Stephen Berry, phv, James Daniel Leftwich, phv, Gregory Baruch, phv, Berry & Leftwich, Washington, DC, for Telecom Technical Services Inc., Realcomm Office Communication, Inc., Nova USA Telecommunications Co., American Telecom Corporation, on behalf of themselves individually and as Class Representatives, DD Hawkins Communications, Inc., Sharecom Division of Start Technologies Corporation, CMS Communications, Inc., Olde York Valley Inn, plaintiffs.

Charles E. Campbell, Long Aldridge & Norman, Atlanta, GA, Otis W. Carroll, Jr., phv, James Patrick Kelley, phv, Office of Otis W. Carroll, Jr., Tyler, TX, Kenneth A. Gallo, phv, Jon R. Roellke, phv, Leiv H. Blad, Jr., phv, Patricia C. Crowley, phv, Clifford Chance Rogers & Wells, Washington, DC, Keith E. Pugh, Jr., phv, Howrey Simon Arnold & White, Washington, DC, for Rolm Company, defendant.

## ORDER

HUNT, District Judge.

Before the Court are defendant's motions for summary judgment on the revised second amended complaint [615] and for oral argument [619]. On June 2, 2000, the Court heard oral argument on the summary judgment motion and, accordingly, the motion requesting such is granted *nunc pro tunc.* This is the second summary judgment motion filed by defendant Siemens Rolm Communications, Incorporated ("Rolm") on plaintiffs' antitrust claims alleging that defendant refused to deal in certain parts unique to Rolm branded PBX equipment. Rolm now maintains that recent, binding precedent mandates that the Court revisit the issue.

## I. BACKGROUND

■ The Court set forth a detailed factual background of this action in its August 17, 1998 summary judgment order. *See Telecomm Tech. Servs. Inc. v. Siemens Rolm Comm., Inc.,* 66 F.Supp.2d 1306 (N.D.Ga.1998). Basically, plaintiffs, independent service companies (the "ISOs") who repair and service Rolm PBX equipment, claim that by refusing to sell them parts unique to its machines Rolm is unlawfully leveraging its market share in the parts foremarket to monopolize the aftermarket of service. Rolm, on the other hand, argues that there are not two relevant markets,[1] parts and service, but only one, a "systems" market, comprised of the original PBX equipment, parts, software, and service.

In its August 17, 1998 summary judgment Order, the Court rejected Rolm's arguments in favor of summary judgment on the refusal to deal claims. First, the Court disagreed that as a matter of law parts and service constitute a single systems market. Evidence showed that the price of Rolm servicing was 30—60% higher than comparable ISO servicing. In reserving the drawing of the relevant market for the jury, the Court reasoned that supercompetitive prices charged for service might indicate that service is in a market distinct from equipment.[2] Second, the Court found that even if the parts at issue are proprietary, a claim might still survive. That is, the fact that intellectual property rights attach to a work will not standing alone permit the right-holder to refuse to deal that good in an aftermarket. It is this aspect of the Court's ruling that Rolm

now challenges. In its ruling, the Court relied on footnote 29 of the Supreme Court decision, *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). There, the Supreme Court reasoned that it "has held many times that power gained through some legal advantage such as patent, copyright, or business acumen can give rise to liability if a seller exploits his dominant position in one market to expand his empire into another." *Id.* at 480 n. 29, 112 S.Ct. at 2089 n. 29 (internal quotation marks, citations omitted). However, a Federal Circuit opinion handed down after this Court's ruling—*In re Independent Service Organizations Litigation,* 203 F.3d 1322 (Fed.Cir.Feb.17, 2000) (*"ISO II"*)— sheds new light on the viability of an antitrust claim stemming from a party's refusal to deal patented and copyrighted goods.

## II. DISCUSSION

### A. *Timeliness*

■ The ISOs claim that Rolm's summary judgment motion is actually an untimely motion for reconsideration, and, in any case, Rolm should not be permitted two bites at the apple. Regardless of whether the instant motion is one for summary judgment or deemed a motion for relief from judgment under Federal Rule of Civil Procedure 60, the Court inherently has the power to accommodate the effect of new law on a still pending case. *See* Fed.R.Civ.P. 60(b)(6) (noting that a court may enter relief from an order for any other reason besides those listed where

---

1. A relevant market by definition is one that includes "products that have a sufficient competitive impact on the product of the defendant to be considered collectively in deciding whether the defendant possesses monopoly power." Earl W. Kintner, *Federal Antitrust Law,* § 12.3.

2. For two products to be in the same relevant market, the price of one must affect the price of the other. Therefore, if service is supercompetitively priced, it would not usually be considered part of the market containing equipment absent a showing that Rolm's equipment was underpriced or that other factors compensated for the higher service cost.

such relief is justified as long as the motion is filed within a "reasonable time"); Fed.R.Civ.P. 54(b) (stating that a non-final order, including one in which summary judgment is denied, "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties"). Thus, the Court concludes that it may properly reexamine its earlier summary judgment ruling in light of *ISO II*.

### B. *Legal Standard*

A court shall grant a motion for summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if, under applicable substantive law, it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir.1992), *cert. denied*, 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed.2d 657 (1993). "It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton*, 965 F.2d at 998 (internal quotation marks omitted). Where the nonmoving party bears the burden of proof at trial, the moving party must demonstrate to the Court that "there is an absence of evidence to support the nonmoving party's case," *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), or must put forth affirmative evidence negating an element of the nonmoving party's case, *Fitzpatrick v. Atlanta*, 2 F.3d 1112, 1116 (11th Cir.1993). It is then the responsibility of the nonmoving party, by revealing evidence outside of the pleadings, to show that evidence sup-

porting its case does exist or that the element sought to be negated remains a genuine issue of material fact to be tried. *Id.* Essentially, this requires the nonmoving party to come forward with evidence sufficient to withstand a directed verdict on this issue at trial. *Id.* at 1116–17.

The nonmoving party is not required to carry its burden of proof at the summary judgment stage. In analyzing the motion, the Court views the facts in the light most favorable to the nonmoving party and makes all factual inferences in favor of that party. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987). "The court must avoid weighing conflicting evidence or making credibility determinations." *Id.* at 919. "Where a reasonable fact finder may draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Id.* (quoting *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir.1989)). However, unsupported statements by the party opposing summary judgment cannot be considered by the Court when evaluating the merits of a motion for summary judgment. *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir.1984).

### C. *The ISO II Decision*

 *ISO II*'s effect on the instant case is profound. In *ISO II*, the Federal Circuit, which undoubtedly has jurisdiction over any appeal in this case,[3] addressed a situation almost identical to the instant case. The defendant in *ISO II*, Xerox, refused to sell any parts to independent

---

**3.** The Federal Circuit has exclusive jurisdiction over any patent issue, and it decides such issues under its own law. *See ISO II*, 203 F.3d at 1325. Moreover, the Federal Circuit also decides any other issues raised as part of

a patent case by applying the law of the circuit in which the district court that tried the case sits. *Id.* Thus, for those non-patent issues present in this case, the Federal Circuit will apply Eleventh Circuit law.

service repair companies ("Repairers"). To prevent a customer from being a straw purchaser who orders and then resells a part to a Repairer for use in the Repairer's business, Xerox instituted an "on-site end-user verification" scheme. Additionally, Xerox prohibited its majority-owned affiliate, Xerox Rank, from selling parts to the Repairers. The Repairers sued for antitrust violations, claiming that Xerox unlawfully refused to sell its patented and copyrighted parts and Xerox counterclaimed for patent and copyright infringement. *Id.* at 1324.

The *ISO II* court framed the Repairers' claims exactly as this Court framed the ISOs' claims: it asked whether the equipment manufacturer "illegally sought to leverage its presumably legitimate dominance in the equipment and parts market into dominance in the service market." Similarly, this Court noted that "this case is about Rolm's exploiting its control over parts and software to monopolize the service market." *Compare ISO II*, 203 F.3d at 1326 *with Telecomm Tech. Servs.*, 66 F.Supp.2d at 1311. And both this Court and the *ISO II* court examined the relevancy of *Kodak* footnote 29. The *ISO II* court, however, rejected its applicability to the case before it. It distinguished *Kodak* on two grounds. First, unlike the *ISO II* defendant, the *Kodak* defendant never justified its refusal to deal in the service market on the grounds that its patent rights insulated its conduct from antitrust considerations.[4] *ISO II*, 203 F.3d at 1327. Second, and more relevant to the instant case, the *ISO II* court noted that footnote 29 addressed only that portion of the *Kodak* case dealing with tying claims, whereas the *ISO II* plaintiff never alleged a tying claim. *Id.* It then interpreted footnote 29 as applying exclusively to tying cases: "Properly viewed within the framework of a tying case, the footnote can be interpreted as restating the undisputed premise that the patent holder cannot use his statutory right to refuse to sell patented parts to gain a monopoly in a market beyond the scope of the patent." *Id.* But, according to *ISO II*, nothing "limit[s] the right of a patentee to refuse to sell or license in markets within the scope of the statutory patent grant." *Id.* The court then went on to find that absent patent misuse, a patent holder's refusal to deal parts crucial to a service aftermarket is still within the patent's scope. *Id.* at 1326, 1329.

■■■■ *ISO II* does not, however, foreclose all refusal to deal claims where patent protection is raised as a defense in a non-tying case. There is still room for a particular plaintiff to show leveraging by proving that the market in which the defendant refused to deal was outside the scope of the patent. *See id.* at 1326. And, it is this exception that ISOs seize upon here, arguing that *ISO II* does not apply to their case. However, plaintiffs cannot avoid the conclusion that *ISO II* clearly holds that as a matter of law the statutory scope of a patent extends beyond the original equipment market into the service market where service requires use of patented parts and where there is no evidence of patent misuse.[5]

---

4. In *Kodak*, the independent service organizations claimed that Kodak refused to sell them parts, thereby effectively shutting them out of the market of servicing and repairing Kodak brand copiers and micrographic equipment. Kodak defended on several grounds, including that parts and service are part of a systems market that includes the original equipment and that its policy was pursuant to legitimate business justifications. *Kodak*, 504 U.S. at 461–62, 112 S.Ct. at 2079–80.

5. Plaintiffs attempt to shoehorn Rolm's requirement that its customers promise not to resell parts into patent misuse. First, *ISO II* rejected any contention that Xerox's identical program constituted antitrust conduct. Second, for purposes of exceeding the scope of a

*ISO II* also addressed whether copyright holders enjoy the same immunity granted patent holders. There, the circuit in which the district court sat had not yet addressed the issue. Accordingly, the Federal Circuit determined what it considered the Tenth Circuit's likely outcome on the issue. After discussing various case law, the court adopted the First Circuit's standard and held that "in the absence of any evidence that the copyrights were obtained by unlawful means or were used to gain monopoly power beyond the statutory copyright granted by Congress" a refusal to deal claim must fail as a matter of law. *ISO II* at 1328–29 (citing *Data General Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir.1994)). As it did with patents, the court found that the scope of a copyright extends beyond the parts market into the service aftermarket. *Id.* at 1329. The Eleventh Circuit, like the Tenth Circuit, has not yet addressed this issue. Accordingly, there is no reason to believe that the Federal Circuits's decision in the instant case would be any different than that in *ISO II*.

Rolm seeks to take *ISO II* further, urging the Court to find that trade secrets enjoy the same degree of protection from refusal to deal claims as do patented and copyrighted works. This stretches *ISO II*'s reach too far. The *ISO II* court, which addressed only copyrighted and patented works, expressly held that refusal to deal was within the scope of those *statutory* rights. *Id.* at 1326, 1328. There is no analogous statutory right regarding trade secrets. Moreover, such an exception would swallow the rule. Given the board definition of trade secret, virtually every anticompetitive refusal to deal would be beyond reach of antitrust law. The only other case Rolm cites in support of its argument, *Intergraph v. Intel*, 195 F.3d 1346 (Fed.Cir.1999), is distinguishable. In that case, some of the works at issue were protected by trade secrets alone and the court generally noted that the owner of a trade secret can refuse to disclose it. *Id.* at 1362–63. The court, however, found that the opposing parties were not competitors in the relevant market and, hence, as a matter of law there could be no antitrust violation. *Id.* at 1363. Because of this finding, the court never addressed the issue of whether trade secrets immunize against refusal to deal claims. Thus, *Intergraph* in no way afforded trade secrets the broad protection *ISO II* affords copyright and patented works. Indeed, to a substantial degree, *Intel*'s holding contradicts Rolm's position. In discussing trade secrets, the court reasoned that "trade secrets are of value only *before* the products embodying them are commercially available." *Id.* (emphasis added). Here, of course, the works allegedly protected by trade secrets are already on the market. Accordingly, even if a trade secret holder was somehow immune from antitrust violations, that protection would be viable only before the product came to market.

### D. *Unilateral or Concerted Conduct*

 The ISOs attempt to distinguish *ISO II* from the instant case by asserting that Xerox's challenged conduct in *ISO II* was a unilateral act, while here Rolm acted in concert with others. As evidence of Rolm's concerted conduct, the ISOs cite the facts that (1) every Rolm customer implemented at Rolm's urging an agreement assuring that it would not buy a part solely for resale,[6] (2) Rolm forbid distribu-

---

patent grant, patent misuse is limited to those situations where the defendant either committed fraud on the patent office or engaged in sham litigation. *See ISO II*, 203 F.3d at 1327. Because none of these actions is at issue here, there is no patent misuse for purposes of

determining whether Rolm's conduct exceed the scope of its grant.

**6.** Some PBX owners choose not to utilize either an ISO or Rolm for service, but instead self-service the equipment.

tors from selling parts to the ISOs, (3) Rolm prohibited manufacturers who make parts for Rolm from selling those parts to an ISO, and (4) Rolm forbid Rolm Resale from selling parts to an ISO. As for forbidding customers from reselling ordered parts, *ISO II* expressly found this conduct unilateral. *See ISO II*, 203 F.3d at 1324, 1329 (noting that Xerox employed a scheme insuring that parts were not resold or otherwise used in machines not owned by the entity ordering the part, but nonetheless finding that the scheme did not run afoul of Xerox's unilateral right not to deal patented and copyrighted works). Likewise, a manufacturer imposing upon a distributor a policy circumscribing with whom that distributor may deal is not involved in a concerted action for purposes of antitrust law. *See Tarrant Service Agency, Inc. v. American Standard, Inc.*, 12 F.3d 609, 617 (6th Cir.1993) (holding that manufacturer of HVAC equipment acted unilaterally where it prohibited independently-owned and company-owned distributors of its parts from selling to independent repair companies), *cert. denied*, 512 U.S. 1221, 114 S.Ct. 2709, 129 L.Ed.2d 836 (1994); *International Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904 (6th Cir. 1989), (reasoning that concerted action cannot be inferred simply from the existence of a manufacturer's marketing policies and a distributor's compliance with them because manufacturers do not need its distributors' acquiescence to impose such policies), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990). Since there is no evidence in this case that Rolm did anything more than simply impose its marketing scheme on its distributors, Rolm's actions in this regard were unilateral.

■ Remaining then are Rolm's alleged joint venture with Norstan and its prohibition on vendors from whom it buys its parts. ISOs assert that Rolm unlawfully prohibited outside vendors that manufacture some of Rolm's proprietary parts from also selling to ISOs. On occasion, Rolm outsourced manufacture of some key PBX components, such as printed circuit boards. In support of their contention, ISOs cite to the testimony of four Rolm executives. However, only one of these executives' testimony can be construed as supporting the ISOs' basic contention that outsourcing occurred and that the outside vendor was prohibited from selling those parts to ISOs. Glen Befort, Rolm's senior vice president of manufacturing, conceded that in 1986 and 1987 Samsung manufactured phones for Rolm under an agreement whereby Samsung could not sell phones it made for Rolm to a third-party.[7] According to Befort, after 1987 Rolm itself manufactured all other essential parts. ISOs present no evidence, however, that Samsung or other manufacturers could not make Rolm PBX-compatible parts for a third party where that party had either an independent design or had reverse-engineered the part. Nor do the ISOs present any authority that a patent holder cannot lawfully impose a scheme such as Rolm's on an outside vendor. Hence, the Court finds that this conduct too is unilateral in nature.

■ Finally, ISOs contend that Rolm entered into a joint venture, called Rolm Resale, with Norstan under which Rolm Resale sold used parts. Although the ISOs characterize the relationship between Rolm and Norstan as a joint venture, there is no evidence to support this. The evidence ISOs cite consists entirely of the

7. The other witnesses—Mitchell Watson, Erik Halleus, and Elizabeth Herrell—either asserted that Rolm manufactured all proprietary components itself or were unaware of whether Rolm prohibited outside vendors from selling to third parties.

testimony of two officers of individual ISOs—Fred Shriner who owns plaintiff Nova and Charles McNamee the CEO of TIE Communications. Neither of these witnesses is competent to testify as to the legal conclusion that Rolm Resale is a joint venture and neither recites factual allegations to support such a legal conclusion. After voluminous discovery, the ISOs have failed to produce any documentation to support a finding that Rolm Resale is a joint venture. Nor do they produce evidence to dispute the plain language of the contract defining the relation between Norstan and Rolm. The contract clearly anticipates an agent-principal relationship whereby "Norstan is an independent contractor" who performs as "an agent of Rolm for the purpose of marketing products." Under the agreement, Rolm compensated Norstan for selling Rolm used equipment via Norstan's telemarketing capabilities. Although Rolm restricted Norstan to offering only certain equipment, terms, and conditions to particular entities, it did so as the principal and accordingly without offending antitrust concerns. *See Nurse Midwifery Assocs. v. Hibbett*, 918 F.2d 605, 611 (6th Cir.1990) (recognizing in antitrust context, the "traditional rule that a principal cannot conspire with one of its agents"), *cert. denied*, 502 U.S. 952, 112 S.Ct. 406, 116 L.Ed.2d 355 (1991); *Siegel Transfer, Inc. v. Carrier Express, Inc.* 54 F.3d 1125 (3d Cir.1995) (reasoning that "in order for the concept of a conspiracy between a principal and an agent to apply in the antitrust context, the exception to the general rule should arise only where an agent acts to further his own economic interest in a marketplace actor which benefits from the alleged restraint, and causes his principal to take the anticompetitive actions about which the plaintiff com-

plains"); *see also ISO II*, 203 F.3d at 1324, 1327–29 (holding that Xerox's policy of prohibiting its majority-owned European affiliate from selling parts was within scope of intellectual property grant).[8] Nor have plaintiffs presented any evidence to refute Rolm's evidence that Rolm Resale is a Rolm-owned subsidiary, thereby making it incapable of acting in concert with Rolm for purposes of antitrust law. *Cf. Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (holding that parent and subsidiary acting together is unilateral activity and not concerted action for purposes of claim brought under § 1 of the Sherman Act). Accordingly, if Rolm's parts are protected by patent and copyright, it was fully within the scope of those property interests to exclude ISOs.

### E. *Burden and Causation*

 Rolm also argues that *ISO II* implicitly realigned the elements of proof so that now a plaintiff bringing an antitrust refusal to deal claim bears the burden of showing that the goods from which it is excluded are not patent or copyright protected. Conversely, the ISOs contend that patent or copyright protection is in the nature of an affirmative defense and, hence, must be proved by the defendant. Both sides claim that the other has failed to carry its burden on this issue. The Court need not address this issue here, because plaintiffs have conceded and the Court and jury in the first phase of the case have found that at least some of Rolm's parts are protected by patent and or copyright. Throughout this case, plaintiffs consistently refer to the proprietary parts to which it seeks access as being controlled by "patents, copyright, trade se-

---

**8.** Moreover, even if Rolm Resale is a joint venture, for antitrust purposes a court may consider the separate participants a single entity where they organize themselves so as to

pursue common interests. *See Siegel Transfer*, 54 F.3d at 1127 (3d Cir.1995); *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 276–77 (8th Cir.1988).

crets, or tooling." *See* revised second amended complaint; Pretrial Order, Attachment C, Plaintiff's Outline of the Case.[9] In fact, in his expert report, plaintiffs' leading antitrust expert, Roger Noll, opined that "Rolm's market power in proprietary parts and software is derived from its intellectual property rights. These components of Rolm PBX were designed to work only in Rolm systems, and can not be duplicated by others without violating patents or copyrights." *See* Noll, Expert Report at 41. Plaintiffs further admit that Rolm's software is "usually" copyright protected. *See* Pretrial Order, Attachment C at 2 n.1. In the counterclaims phase of this case, the Court found that as a matter of law Rolm owned valid copyrights in PhoneMail software releases and the software used on model 9000 and 9751 PBXs. It also found that Rolm owned copyrights in software used on all model 8000 PBXs and the jury determined that those copyrights were not defeated by lack of notice. It is not entirely clear that the same patented works at issue in the counterclaims are also at issue in the antitrust claims. The same cannot be said for the copyrighted software, however. Plaintiffs concede that Rolm's usually copyrighted software is absolutely necessary to add end user functions, adjust PBX capacity, allow continued PBX operation where an area code is changed, and diagnose problems in the system. Given both the ISO's admissions and the jury's findings, it is beyond question that at least some of the proprietary parts Rolm refuses to deal are covered by patents or copyrights and are accordingly protected under *ISO II.* Rolm may lawfully exclude the ISOs from these parts.

Given this, the ISOs are unable to separate the effects of Rolm's lawful conduct from its alleged unlawful conduct with respect to new parts. To succeed, an antitrust plaintiff must adhere to common law principles of causation. *See Associated General Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 537 n. 33, 103 S.Ct. 897, 908 n.33, 74 L.Ed.2d 723 (1983); *Todorov v. DCH Healthcare Authority,* 921 F.2d 1438, 1459 (11th Cir.1991) (citing *Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986)). An ingredient of the causation requirement is the burden on the antitrust plaintiff to disaggregate its damages. That is, at some point, a plaintiff must apportion losses caused by a defendant's lawful, but anticompetitive conduct from losses stemming from defendant's unlawful antitcompetitive conduct. *See MCI Communications Corp. v. AT & T Co.,* 708 F.2d 1081, 1161 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). Here, plaintiffs concede that without access to Rolm's entire parts inventory, they will be completely precluded from performing any service on Rolm branded PBXs:

> [a]n ISO competing with Siemens/Rolm for service cannot provide timely and efficient service if it lacks access to *any* important part and software that is necessary for service. This is because a telephone system is very important to the end user and a failure is extremely costly. Because the ISO or Siemens/Rolm does not know in advance which parts and software will be needed for future service, the service company must have access to all important parts and software that might be needed to fix the PBX.

Pretrial Order at 4 (emphasis in original). Rolm may rightfully exclude the ISOs from at least some of its key software, and under the ISOs' own admissions to do so

---

**9.** The Pretrial Order supercedes all pleadings, which are deemed amended to conform with the Pretrial Order. *See* L.R. 16.4 (N.D.Ga. 1997).

results in their total inability to compete in the aftermarket of servicing Rolm PBXs. Accordingly, it will be impossible for the ISOs to prove that their losses stemmed from Rolm's unlawful conduct. That is, as long as Rolm lawfully refuses to provide the ISOs with access to patent and copyrighted parts, the harm that the ISOs suffer is exactly the same as where Rolm unlawfully refuses to sell non-protected parts. Accordingly, summary judgment is warranted on all of the ISOs' claims involving new parts.

### F. *Used Parts*

Because of the doctrine of patent exhaustion and the first sales doctrine in copyright law, the fact that a work is patented or copyrighted will not, standing alone, permit the holder of that right from excluding others. The ISOs contend that Rolm's alleged restriction on used parts has always been an issue in this case. And, in fact, their Pretrial Order lists denial of access to used parts as one of Rolm's alleged anticompetitive means, specifically through Rolm allegedly imposing a prohibition forbidding Rolm Resale from selling used parts to ISOs. However, on September 15, 1997, this Court expressly disallowed a third amendment to plaintiffs' complaint that included a claim that plaintiffs conspired to exclude ISOs from obtaining used parts.[10] The second amended complaint, which controlled the scope of the case through discovery, in no way put plaintiff on notice that this case involved used parts as well as new. The second amended complaint refers to used parts only once in the section entitled "Rolm Conduct Suppressing Competition in the Relevant market for Service of Rolm PBXs." There, ISOs allege that Rolm's

policies reduce the ISOs to obtaining parts by cannibalizing old Rolm equipment to obtain parts "which may not be as reliable as new parts." This is hardly enough to put Rolm on notice that its used parts policy would be subject to an antitrust challenge.[11]

Importantly, even if the Court found that the Pretrial Order validly modified the complaint, the used parts claim must still fail. First, to the extent that the claim alleges that Rolm monopolized the used parts market, the ISOs' own expert, Roger Noll, testified that he "can't imagine that even if they tried, they [Rolm] could succeed in [monopolizing the used parts market]." Nor does adopting the ISOs' argument advanced in oral argument alter the result. The ISOs argued that the used parts claim does not allege that Rolm is seeking to monopolize the used parts market. Rather, it claims that Rolm is controlling the used parts market to leverage the service market.[12] So framed, the used parts claim is identical to the ISOs' other antitrust claims and, for the same reason, it too must fail. ISOs concede that without access to all parts, in this case new or used, they are unable to compete on any level. And, because Rolm's intellectual property rights permit it to lawfully refuse to deal at least some of its parts, the ISOs cannot show any additional injury due to Rolm's unlawful conduct.

### III. CONCLUSION

For the reasons stated above, the Court hereby GRANTS defendant's motion for oral argument [619] and for summary judgment [615].

---

10. As the Court discussed above, Rolm Resale is a Rolm subsidiary with Norstan acting as Rolm's agent. Accordingly, there could be no conspiracy even had the Court permitted the claim.

11. Nor, did the ramification of Rolm's used part policy come up in any meaningful way during discovery.

12. *See,* transcript, June 6, 2000 hearing.

*ORDER and FINAL JUDGMENT*

The counterclaims phase of this action came before the Honorable Willis B. Hunt, Jr., United States District Judge, for jury trial and the issues having been duly tried and the jury having duly rendered its verdict,

IT IS ORDERED AND ADJUDGED that judgment on the counterclaims is hereby entered in favor of the counterplaintiffs, Siemens Rolm Communications, Inc., and against counterdefendants in the following amounts:

| | |
|---|---|
| Telecomm Technical Services, Inc. | $ 22,800 |
| American Telecomm Corporation | $173,000 |
| CMS Communications, Incorporated | $920,000 |
| RealCom Office Communications, Inc. | $ 37,500 |
| Nova USA Communications Company | $112,000 |

Additionally, because this case is finally adjudicated, the Court now enters permanent injunction against defendants, the independent service organizations. Specifically, the Court enjoins defendants from (1) making, using or selling products embodying Siemens Rolm's patents and (2) using the RCTL program and any of Siemens Rolm's engineering-level passwords that defendants possess. Because damages awarded for defendants' copyright infringement are duplicative of all other awards and because the copyright infringement does not warrant the entry of prejudgment interest, the Court declines to award such interest. Accordingly, the Court GRANTS IN PART and DENIES IN PART plaintiff's motion for injunctive relief and prejudgment interest [604].